# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### CASE NO. 24-11672

### DISTRICT COURT CASE NO.  8:21-cr-00218-WFJ-AAS-17

### UNITED STATES OF AMERICA,
**Appellee,**
**v.**

### SHAWN RUARK,
**Appellant.**

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CRIMINAL APPEAL
_____

### INITIAL BRIEF OF APPELLANT

━━━━━━━━━━━━━━━━━━━━━━━

**J. RAFAEL RODRÍGUEZ, ESQ.**
**LAW OFFICES OF**
**J. RAFAEL RODRÍGUEZ**
**6367 Bird Road**
**Miami, Florida 33155**
**(305) 667-4445**
**(305) 667-4118 (FAX)**
**jrafrod@bellsouth.net**

**This case is entitled to preference (criminal appeal)**
**[Defendant is incarcerated]**

UNITED STATES OF AMERICA v.
SHAWN RUARK

CASE NO. 24-11672

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

CASE NO. 24-11672

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

v.

SHAWN RUARK,

Defendant/Appellant.

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned, counsel of record for SHAWN RUARK,

Defendant/Appellant, furnishes the following list pursuant to 11th Circuit Rules

26.1-1, 26.1-2(a) and 28-1(b).  These representations are made in order that this

Court may evaluate possible disqualification or recusal.

Abdelghany, Omar

Adams, The Hon. Natalie Hirt

C1 of 6

UNITED STATES OF AMERICA v.
SHAWN RUARK

CASE NO. 24-11672-A

Anderson, Steve

Andrews, George

Arnold, Jarrett

Beckman, Samantha Elizabeth

Brown, Jeffrey Geldert

Burns, Thomas A.

Candela, Anthony Michael

Clifton, Douglas Hill

Collins, Clyde M.

Corrigan, The Hon. Timothy J.

Cunningham, Collette B.

Dee, David Alan

Farmer, Matthew P.

Fisher, Joshua

Fitzgerald, Timothy

C2 of 6

UNITED STATES OF AMERICA v.
SHAWN RUARK

CASE NO. 24-11672-A

Flynn, The Hon. Sean P.

Gottfried, William Elliot Michael

Guzman, Maria

Hall, Joshua

Handberg, Roger B.

Hernandez, Daniel

Hernandez, Daniel Mario

Holden, Warren

Hoppmann, Karin

Honeywell, The Hon. Charlene Edwards

Howell, David

Howard, Ryann

Johnson, Darrin E.

Jung, The Hon. William F.

Kerr, Christopher

C3 of 6

UNITED STATES OF AMERICA v.
SHAWN RUARK

CASE NO. 24-11672-A

Kotler, Yuli

Kurpiers, Ronald J.

Lasnetski, Jeremy

Mapoles, James

Maddox, Michael P.

Marshall, Scott

McDermott, Frank W.

McLaughlin, Ryan

Mayberry, Jason Matthew

Mikkelson, Brian

Moore, John Edward

Porcelli, The Hon. Anthony E.

Rankin, Mark P.

Rhodes, David P.

Richardson, The Hon. Monte C.

C4 of 6

UNITED STATES OF AMERICA v.
SHAWN RUARK

CASE NO. 24-11672-A

Rodríguez, J. Rafael

Ruark, Shawn

Sansone, The Hon. Amanda Arnold

Sharp, Levi

Shein, Andrew Barrett

Simeoni, Serbo C.

Smiley, Chad

Stechschulte, Benjamin

Sullivan, David P.

Terrana, Richard D.

Terranova, Darrin

Tuite, The Hon. Christopher P.

Walker, William

Welch, Brandon

Williamson, Joshua

Woodcock, Jason

UNITED STATES OF AMERICA v.
SHAWN RUARK

CASE NO. 24-11672-A

Zimmerman, Warren A.

*s/ J. Rafael Rodríguez*
J. RAFAEL RODRÍGUEZ, ESQ.
6367 BIRD ROAD
MIAMI, FL 33155
(305) 667-4445
(305) 667-4118 (FAX)
jrafrod@bellsouth.net

C6 of 6

## STATEMENT AS TO ORAL ARGUMENT

The undersigned counsel for Appellant Shawn Ruark believes that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

## STATEMENT ON RELATED CASES

Appellant notes the following cases are related cases on appeal: *United States v. Brian Mikkelson*, Case No. 24-11393, *United States v. Joshua Williamson*, Case No. 24-11671, *United States v. Joshua Fisher*, Case No. 24-11798, *United States v. Scott Marshall*, Case No. 24-11931, *United States v. Maverick Maher*, Case No. 24-12014, and *United States v. Brandon Welch*, Case No. 24-12235.

## **TABLE OF CONTENTS**

Page(s)

CERTIFICATE OF INTERESTED PERSONS ..C1of 1

STATEMENT AS TO ORAL ARGUMENT ..i

STATEMENT ON RELATED CASES ..i

TABLE OF CITATIONS ..iv

STATEMENT OF JURISDICTION ..1

STATEMENT OF THE ISSUES ..1

STATEMENT OF THE CASE

    I.    COURSE OF PROCEEDINGS AND DISPOSITION IN

        THE COURT BELOW ..1

    II.    STATEMENT OF THE FACTS ..6

    III.    STATEMENT OF THE STANDARD OR SCOPE OF

        REVIEW ..10

SUMMARY OF ARGUMENT ..11

ARGUMENT

**I.**

**THE DISTRICT COURT ERRED IN APPLYING THE "MORE
THAN MININAL PLANNING" ADJUSTMENT**

..13

**II.**

**THE DISTRICT COURT ABUSED ITS DISCRETION IN
GRANTING AN UPWARD VARIANCE FROM THE
ADVISORY SENTENCING GUIDELINES RANGE**

..19

CONCLUSION                                              ..20

CERTIFICATE OF COMPLIANCE                               ..21

CERTIFICATE OF SERVICE                                  ..21

iii

## TABLE OF CITATIONS

**CASE**                                                                          **Page(s)**

*Betterman v. Montana*, 578 U.S. 437, 136 S.Ct. 1609,
194 L.Ed.2d 723 (2016)                                                            ..21

*Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586,
169 L.Ed.2d 445 (2007)                                                            ..10,24,25

*Holguin-Hernandez v. United States*, 589 U.S. 169, 140 S.Ct. 762,
206 L.Ed.2d 95 (2020)                                                            ..23

*United States v. Alvarado*, 808 F.3d 474 (11th Cir. 2015)                        ..10

*United States v. Boone*, 97 F.4th 1331 (11th Cir. 2024)                          ..10

*United States v. Castellanos*, 904 F.2d 1490 (11th Cir. 1990)                    ..23

*United States v. Crawford*, 407 F.3d 1174 (11th Cir. 2005)                       ..17

*United States v. Cubero*, 754 F.3d 888 (11th Cir. 2014)                          ..10

*United States v. Curtin*, 78 F.4th 1299 (11th Cir. 2023)                         ..13

*United States v. Daniels*, 148 F.3d 1260 (11th Cir. 1998)                        ..17

*United States v. Garcia*, 13 F.3d 1464 (11th Cir. 1994)                          ..17

*United States v. Gonzalez*, 550 F.3d 1319 (11th Cir. 2008)                       ..13

*United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010(*en banc*)                 ..10,25

*United States v. Isaac*, 987 F.3d 980 (11th Cir. 2021)                           ..10,13

*United States v. Johnson*, 877 F.3d 993 (11th Cir. 2017)                         ..10

*United States v. Johnson*, 803 F.3d 610 (11th Cir. 2015)          ..25

*United States v. Rothenberg*, 610 F.3d 621 (11th Cir. 2010)          ..10

*United States v. Steiger*, 107 F.4[th] 1315 (11th Cir. 2014)          ..25

*United States v. Tapia*, 59 F.3d 1137 (11th Cir. 1995)          ..17,18

*United States v. Ward*, 222 F.3d 909 (11th Cir. 2000)          ..17

*United States v. Williams*, 526 F.3d 1312 (11th Cir. 2008)          ..24

## **STATUTE**

18 U.S.C. §2          ..1

18 U.S.C. §1959(a)(3)          ..1

18 U.S.C. §1959(b)(1)          ..7

18 U.S.C. §1959(b)(2)          ..6

18 U.S.C. §1961(1)          ..7

18 U.S.C. §3553(a)          ..10,13,25

21 U.S.C. §841          ..7

21 U.S.C. §846          ..7

28 U.S.C. §1291          ..1

§1B1.3(a)(1), U.S.S.G.          ..23

§2A2.2, U.S.S.G.          ..13

§2A2.2(b)1), U.S.S.G.          ..16

§2A2.2, comment n.2, U.S.S.G.                    ..16

**<u>RULE</u>**

Rule 26.1-1, 11th Cir. R.                        ..C1 of 1

Rule 26.1-2(a), 11th Cir. R.                     ..C1 of 1

Rule 28-1(b), 11th Cir. R.                       ..C1 of 1

Rule 32-4, 11th Cir.R.                           ..27

Rule 32(a)(5) and (a)(6), Federal Rules of Appellate Procedure    ..27

Rule 32(a)(7)(B), Federal Rules of Appellate Procedure            ..27

## STATEMENT OF JURISDICTION

This is a direct criminal appeal.  This Court's jurisdiction arises under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

Whether the district court erred in applying the "more than minimal planning" adjustment.

Whether the district court abused its discretion in granting an upward variance from the advisory sentencing guidelines range.

## STATEMENT OF THE CASE

## (I)

## COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT BELOW

Appellant, Shawn Ruark, was a defendant in the trial court and appellee, United States of America, was the prosecution.  Record references will be made by referring to the document number and page number within the document, as reflected in the docket sheet.  The parties will be referred to as they appeared below.  All emphasis is supplied unless otherwise indicated.

Defendant was charged in a multi-defendant superseding indictment charging assault in aid of racketeering activity, in violation of 18 U.S.C. §§1959(a)(3) and 2 [Count 12], and assault in aid of racketeering activity, in violation of 18 U.S.C. §§1959(a)(3) and 2 [Count 13]. (DE 665)[Appendix 665].

On January 12, 2024, Defendant entered a plea of guilty along with co-defendant Brian Mikkelson. (DE 1205).  Defendant pled guilty on Counts 12 and 13. (DE 1205: 5).  There was no plea agreement. (DE 1205: 6).  The court reviewed the allegations of Counts 12 and 13. (DE 1205: 7-8).  The court reviewed the rights a defendant has going to trial. (DE 1205: 10).  Defendant admitted to all the necessary facts of jurisdiction and elements of the crime. (DE 1205: 11; DE 1205: 12-13).  The court reviewed additional rights Defendant would be waiving upon entry of a plea. (DE 1205: 11-12).  The court also reviewed the maximum penalties and the application of the advisory sentencing guidelines. (DE 1205: 14).  The court reviewed supervised release. (DE 1205: 15).  Defendant pled guilty. (DE 1205: 15-16).  The Government provided a factual basis for the plea. (DE 1205: 17-22).  The court found a basis for the plea. (DE 1205: 22-23).  The court reviewed the possibility of restitution in the case. (DE 1205: 23).  The court accepted the defendants' pleas. (DE 1205: 24).

On May 22, 2024, the court conducted a sentencing hearing. (DE 1206) [Appendix 1206].  The defense had filed a memorandum in support of objections to the pre-sentence investigation report. (DE 1079: 42-44).  The defense objected to the recommendation for a two-level increase that he was engaged in more than minimal planning against victim C.S (DE 1070: 42-43) and objected to a two-level increase that he was engaged in more than minimal planning against victim W.H.

(DE 1079: 43).  At sentencing, the court entertained argument by defense counsel.

(DE 1206: 4-6).  Thereafter, the court ruled as follows:

> "…I actually have been more than once bass fishing near Satsuma.  And Satsuma to Lake City, again don't quote me, but I'm quite certain it's over a 90-minute driver.  And, of course, they had to gather up.  There was a meeting and then the vote or the discussion in Satsuma, and then they had to make arrangements to meet and to drive and to gather up.
> It's my understanding that Mr. Ruark brought a shotgun, and they had a meet-up then at Lake City in several cars.  One of the gentlemen, his girlfriend or wife drove and waited there.  So there was more than minimal planning.
> Same thing on W.H.  You know, Mr. Ruark, I guess, brought his tattoo gun, or someone did.  And Mr. Ruark – you know, there was some planning there.  It was more than minimal, including the other fellow who brought the – I think it was the other fellow who brought the hand torch and turned it on or lit it.  And then of course the other fellow gathered up the brass knuckles.  And so it was more than minimal planning.  But I appreciate it, and the objection is fully preserved." (DE 1206: 6-7).

Thereafter, the court found that total offense level at 27, the criminal history category at IV and an advisory range of 100 to 125 months imprisonment with a one-year term of supervised release. (DE 1206: 8).  The Government argued for an upward variance to 210 months.  The Government maintained that Defendant was tasked with enforcing the objectives of the Unforgiven.  The prosecutor alluded to the victims' testimonies during the co-defendants' trial and argued that the crimes for which Defendant pled guilty were among some of the most brutal.  In the matter involving C.S., the prosecutor referred to Jason Woodcock's trial testimony regarding Defendant's involvement.  In the matter of W.H., the prosecutor referred to the testimony of W.H.'s roommate, Bellere.  The Government argued that both

crimes occurred in other people's homes. (DE 1206: 8-10). The Government also asserted that Defendant's violent criminal history warranted an upward variance. (DE 1206: 10-11). The prosecutor also pointed out that testimony at trial showed that Maverick Maher fled when the indictment was issued and Maher was with Defendant at the time. (DE 1206: 11). The Government noted that Defendant had never cooperated with law enforcement and from his actions had no intention of changing his criminal activity. (DE 1206: 11-12). In closing, the prosecutor told the court that Defendant "stands before you emboldened, prepared to go into people's homes armed with firearms, as a felon who's been convicted of that same offense, and to commit absolutely brutal crimes for no reason other than his ideology. He's a terrorist. He's a danger to the community. And a sentence of 210 months would serve the purposes of 3553 most appropriately." (DE 1206: 12). Defense counsel responded that he was very reluctant to represent anyone involved in this case. (DE 1206: 13-14). However, when he met Defendant he found someone who had never had a real opportunity to gain acceptance. He came from a broken, dysfunctional family. Defendant agreed to plead openly and put the entire matter behind him. However, Defendant understands that once in prison he could be targeted by others. Defendant chose not to cooperate for fear of blow-back in prison. (DE 1206: 14-16). Counsel pointed out that Defendant accepted full responsibility for what he had done. (DE 1206: 16-17). The defense requested

a guidelines sentence because all his conduct and criminal history have been accounted for. (DE 1206: 17-18; DE 1206-19-20).  The court read a letter from Defendant's wife. (DE 1206: 20; DE 1118).  Defendant addressed the court. (DE 1206: 21).  Thereafter, the court noted Defendant's long list of criminal offenses. The court also pointed out that it was mind-boggling that someone would bring a blow torch to an assault. (DE 1206: 22).  The court determined that an upward variance was needed. (DE 1206: 24).  The court sentenced Defendant to 180 months concurrent on both counts with a three-year term of supervised release. (DE 1206: 24; DE 1241) [Appendix 1241].

Defendant filed a notice of appeal. (DE 1122) [Appendix 1122].  This appeal follows.

## (II)

## STATEMENT OF FACTS

The Government provided a factual proffer at the change of plea hearing. On Counts 12 and 13, the prosecutor stated: "Your Honor, prior to the events described in the counts of the superseding indictment in this case, and continuing until at least up to and including the date of the superseding indictment, the defendants and others were members and associates of the Unforgiven. The Unforgiven includes – the Unforgiven, including its leadership, membership, and associates constituted an enterprise as defined by 18 U.S.C. Code 1959(b)(2). The Unforgiven are a violent, white-supremacist organization whose activities affected interstate and foreign commerce. The enterprise had the purposes of:

Propagating Aryan philosophy;

Preserving and expanding the power, territory, and reputation of the enterprise through recruitment, indoctrination of white supremacist ideology, pursuit of business and political leadership, intimidation, and threats and acts of violence;

Keeping rivals in fear of the enterprise and in fear of its members and associates through threats and acts of violence;

Enriching the members and associates of the enterprise through, among other things, distribution of weapons, narcotics, and contraband;

Creating a front to resist and rebel against a perceived constant and almost brutal victimization of whites in the Florida Department of Corrections; and

Protecting enterprise members by concealing, destroying evidence of, and threatening or retaliating against witnesses to its illegal activities.

The enterprise, through its members and associates, engaged in racketeering activity as defined in 18 United States Code 1959(b)(1) and 1961(1), including:

Acts and threats involving murder;

Acts and threats involving kidnapping;

Acts involving robbery;

Acts indictable under the following provisions of federal law, including United States Code provisions relating to the obstruction of justice, tampering with witnesses, victims or informants;

Additionally, offenses involving the felonious manufacture, receiving, concealment, buying, selling and otherwise dealing in controlled substances in violation of 21 United States Code 841 and 846.

Unforgiven members often used – well, I know that the defense won't agree to this so I'll skip it.  The enterprise commitment violence against perceived racial enemies, as well as its own members who failed to abide by the enterprise's constitution and bylaws, otherwise known as its code.  The enterprise viewed

cooperation with law enforcement as one of the most serious violations of its code and one which required extreme punishment.

The enterprise often revoked the membership of those who violated its code with extreme violence, including by forcibly defacing the member's patch tattoos or otherwise violently mutilating the kill zone areas of the bodies bearing those patch tattoos.

Shawn Ruark and Brian Mikkelson were members of the Unforgiven during the period charged in the indictment.

As to Mr. Ruark, on or about July 25, 2020, Unforgiven members gathered at Levi Sharp's residence in Satsuma, Florida.  During the gathering, Jason Woodcock presented the members with information that C.S., then a member of the Unforgiven, was using narcotics in violation of the Unforgiven's rules. Maverick Maher ordered Fisher, Shawn Ruark, Jason Woodcock, and others to repossess C.S.'s patch.  Fisher, Ruark, and Woodcock traveled to C.S.'s house in Lake City, Florida.  Once there, Fisher, Ruark, and Woodcock and others forced entry into C.S.'s home.  The attackers beat C.S. and used a knife to cut C.S.'s patch, which was a tattoo placed on C.S.'s upper back at the base of his neck. While leaving, the attackers said something about, quote, your neighborhood white supremacists.

W.H. was a member of the Unforgiven in July of 2020. W.H.'s birthday is the first week of July 2020. On a date on or around his birthday, W.H. was confronted in his home by members of the Unforgiven who came to remove his patch. W.H. identified Joshua Fisher, Brian Mikkelson and described two other men in his house. W.H. identified Shawn Ruark's distinct face tattoos. W.H. was attacked by the men, including Ruark. They struck W.H. with hands and weapons. W.H. described him during the attack.

W.H. described Mikkelson threatening to burn the patch off with a torch. And just to be clear, that is an assertion by W.H. I understand Mr. Mikkelson does not agree to that. W.H. eventually let the men cover his tattoo for fear that he would be killed if he did not. Fisher held down W.H. while another member of the Unforgiven covered – while another member covered the Unforgiven patch on W.H.

And, Your Honor, that information about W.H. relates to Count 13, which both defendants are charged in and are pleading to here." (DE 1205: 17-21).

## (III)

## STATEMENT OF THE STANDARD OR SCOPE OF REVIEW

When reviewing a sentence an appellate court first looks to see if the district court committed any significant procedural error. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). When considering the district court's resolution of guidelines issues, an appellate court reviews legal issues *de novo*, factual findings for clear error, and the court's application of the sentencing guidelines to the facts with due deference. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010); *United States v. Isaac*, 987 F.3d 980, 990 (11th Cir. 2021). The court next examines whether the sentence imposed is substantively unreasonable in light of the 18 U.S.C. §3553(a) factors and the totality of the circumstances. *United States v. Alvarado*, 808 F.3d 474, 496 (11th Cir. 2015). The appellate court reviews the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 53, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010(*en banc*). A party challenging the sentence bears the burden of showing it is unreasonable. *United States v. Boone*, 97 F.4th 1331, 1338-1339 (11th Cir. 2024). Review of a district court's decision whether to exercise its discretion is deferential but is not simply a rubber stamp. *United States v. Johnson*, 877 F.3d 993, 997 (11th Cir. 2017).

# SUMMARY OF ARGUMENT

The district court erred in applying the "more than minimal planning" adjustment. The record shows that in the incident involving C.S., there were no steps taken to conceal identity. There were no steps taken to conceal who they were from witnesses. There was no attempt to hide evidence. The planning for the assault perpetrated on C.S. was typical for the commission of the offense in a simple form. Additionally, there was no issue of repeated behavior since the offense was committed once on C.S. and completed. The proffer as to the W.H. incident did not establish any attempt by Defendant or his co-defendants to conceal identity or hide evidence. Moreover, the pre-sentence investigation proffered no evidence showing attempts to conceal identity or hide evidence. Notably, W.H.'s roommate witnessed the incident. The planning for the assault perpetrated on W.H. was typical for the commission of the offense in a simple form. Moreover, there was no issue of repeated behavior since the offense was committed once on W.H. and completed.

The district court abused its discretion in giving an upward variance from the advisory guidelines range. Defendant's due process right to a fundamentally fair sentencing proceeding was violated in this case. At sentencing, the prosecutor repeatedly referred to testimony presented at the co-defendants' trial. Neither Defendant nor his counsel were present at the co-defendants' trial and Defendant's

counsel had no opportunity to challenge the testimony relied on by the Government and was unable to confront it. It was improper for the Government to rely on such testimony and unfair for the Court to consider prosecutor's argument about trial testimony in granting an upward variance. Additionally, the Court clearly considered the co-defendant's act in bringing a blow-torch to the assault and that such act merited an upward variance in this case. It was fundamentally unfair to have Defendant's sentence measured by a co-defendant's act. There was no evidence or testimony presented that Defendant knew or was even aware that the co-defendant was going to bring a blow-torch to the assault. The co-defendant's act was not "reasonably foreseeable." Finally, the Court sentenced Defendant to 180 months, which represented a 65-month increase from the top of the corresponding sentencing guidelines. When a district court imposes a sentence outside the advisory guidelines range, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance. The justification must be sufficiently compelling to support the degree of the variance. The district court relied heavily on Defendant's prior record, but Defendant's prior record was a matter which had been thoroughly accounted for in the calculating the advisory sentencing range. More importantly, the Court did not explicitly find that an upward variance was reasonable because the Guidelines range understated the seriousness of Defendant's criminal history.

## ARGUMENT

## I.

## THE DISTRICT COURT ERRED IN APPLYING THE "MORE THAN MININAL PLANNING" ADJUSTMENT

Defendant submits the district court erred in applying the "more than minimal planning" adjustment.  To be procedurally reasonable, a defendant's guidelines range, including the application of any enhancements, must have been correctly calculated. *United States v. Isaac*, 987 F.3d 980, 990 (11th Cir. 2021)(citing *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008)).  In *United States v. Curtin*, 78 F.4th 1299, 1311 (11th Cir. 2023), this Court noted that the U.S. Supreme Court has explained that "significant procedural errors" include failing to calculate or improperly calculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the §3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence, including any deviation from the Guidelines range.

In the present case, the U.S. Probation's recommended a two-level upward adjustment under §2A2.2, U.S.S.G. for "more than minimal planning" in each of the incidents involving victims C.S. and W.H. (DE 1079: 44-45; DE 1079: 17-18, ¶¶68 & 69; DE 1079: 20-21, ¶¶84 & 92).  The defense objected to these enhancements. (DE 1079: 42-43; DE 1206: 4-6).  At the sentencing hearing, counsel presented the following argument:

13

MR. MAYBERRY: "… Essentially, the crux of the argument is that considering who this organization is, how they tended to operate, much of the basis for my argument on this is this was a group of men predominantly that, for all intents and purposes, did not seem to put a lot of planning and brainpower behind a lot of what they did.  They did a lot of things that were obviously violent and illegal, but it seemed to me that short of the leadership of Maverick Maher and perhaps Joshua Fisher to some extent, there was quite a bit of knee jerk reaction in response to what they were told to do.

My argument is essentially when these decisions were made to go out and commit these assaults on these men, there was a meeting that was called.  They went.  They said, okay, this is what we want to do.  We want to go and remove these patches from these men.  They called the vote.  The vote carried.  Off they went to conduct these crimes.

With respect to the C.S. individual, there were no steps taken to conceal identity.  There were no steps taken to conceal who they were from witnesses.  They essentially drove up the residence, stormed the home, took the individual and conducted the, I guess, initial we're gong to do this either by force or not, and then ultimately they conducted the crime, as opposed to weeks' worth of planning in terms of when to go when someone would not be there without being recognized in terms of a vehicle or a license plate.  You know, it wasn't something where this was a well calculated cat burglary, so to speak, where they were making every effort to conceal who they were and not get caught ultimately.  It was very much a, we're going to do this, let's go do this, and so they went.

And so based upon the case law that I had cited within the memorandum, for both of these individuals, the W.H. and the C.S., it's my argument that there was very little planning involved in this.  There was a decision that was made.  They carried out the actions.  The actions were successful for the most part.  But in terms of an enhancement for anything other than a minimal planning, nearly knee jerk decision after a voted was imposed, I would agree that that was not the case.

I think that it is relevant for the Court's consideration what kind of an organization this was.  And it was – essentially it was a group of unsophisticated convicted felons that I don't believe – without disparaging these individuals, I don't think that they thought really much further than an arm's length in front of them but for a few in the organization.

And so for those reasons, Your Honor, I think that in concert with what I know about how they were conducted from the discovery, that's the basis and the baseline for my argument.

I appreciate you giving me the opportunity to speak, Your Honor." (DE 1206: 4-6).[1]

The Court noted for the record that he was aware of the distance involved between Lake City and Satsuma from personal experience, noting it was a 90-minute drive. (DE 1206: 6).[2]　The Court also pointed out that there was a meeting, a vote and a discussion in Satsuma and then they had to make arrangements to gather up. (DE 1206: 6-7).　The Court pointed out that Defendant brought a shotgun and Defendant's wife or girlfriend drove and waited.　As to W.H., the Court noted that Defendant brought a tattoo gun, a co-defendant brought a blow torch and lit it and another brought brass knuckles. (DE 1206: 7).　Based on the foregoing, the Court found "more than minimal planning" and denied Defendant's objections. (DE 1206: 7).

---

[1] In the written memorandum, the defense also claimed that there was no issue of repeated behavior since the offense was committed once on C.S. in a unique fashion, which was different from the conduct against W.H. (DE 1079: 43). It was also pointed out that in the W.H. incident the assailants took no action to conceal themselves.　In fact, W.H.'s roommate witnessed the assault and later made identifications.　Moreover, the W.H. incident was committed once and there was no issue of repeated conduct. (DE 1079: 43).

[2] The district court erred in basing its decision, at least in part, on its own personal experience regarding the distance and driving time between Satsuma and Lake City.　The Government did not bring forth evidence on this point at sentencing.

Section 2A2.2(b)(1), U.S.S.G., which addresses aggravated assault, provides

that "[I]f the assault involved more than minimal planning, increase by 2 levels."

§2A2.2, comment n.2 states:

> **2. Application of Subsection (b)(1).-**For the purposes of subsection (b)(1),
> "more than minimal planning" means more planning than is typical for
> commission of the offense in a simple form. "More than minimal planning"
> also exists if significant affirmative steps were taken to conceal the offense,
> other than conduct to which §3C.1. (Obstructing or Impeding the
> Administration of Justice) applies. For example, waiting to commit the
> offense when no witnesses were present would not alone constitute more than
> minimal planning. By contrast, luring the victim to a specific location or
> wearing a ski mask to prevent identification would constitute more than
> minimal planning.

In the present case, the record shows that in the incident involving C.S., there

were no steps taken to conceal identity. There were no steps taken to conceal who

they were from witnesses. There was no attempt to hide evidence. The prosecutor

provided the factual proffer, on which Defendant tendered his plea of guilty, and

addressed the C.S. incident. The prosecutor stated:

> "As to Mr. Ruark, on or about July 25, 2020, Unforgiven members gathered
> at Levi Sharp's residence in Satsuma, Florida. During the gathering, Jason
> Woodcock presented the members with information that C.S., then a member
> of the Unforgiven, was using narcotics in violation of the Unforgiven's rules.
> Maverick Maher ordered Fisher, Shawn Ruark, Jason Woodcock, and others
> to repossess C.S.'s patch. Fisher, Ruark, and Woodcock traveled to C.S.'s
> house in Lake City, Florida. Once there, Fisher, Ruark, and Woodcock and
> others forced entry into C.S.'s home. The attackers beat C.S. and used a knife
> to cut C.S.'s patch, which was a tattoo placed on C.S.'s upper back at the base
> of his neck. While leaving, the attackers said something about, quote, your
> neighborhood white supremacists." (DE 1205: 19-20).

16

The proffer as to the C.S. incident did not establish any attempt by Defendant or his co-defendants to conceal identity or hide evidence.  Likewise, the pre-sentence investigation proffered no evidence showing attempts to conceal identity or hide evidence. (DE 1079: 17, ¶68).  The planning for the assault perpetrated on C.S. was typical for the commission of the offense in a simple form.  Additionally, as counsel noted below, there was no issue of repeated behavior since the offense was committed once on C.S. and completed. *See United States v. Tapia*, 59 F.3d 1137, 1144 (11th Cir. 1995)(district court erred in finding enhancement where defendant took no steps to conceal the crime and crime did not involve repeated acts over period of time). *Compare United States v. Ward*, 222 F.3d 909, 911 (11th Cir. 2000)(enhancement upheld where defendant took steps to conceal crime); *United States v. Daniels*, 148 F.3d 1260, 1261 (11th Cir. 1998)(enhancement upheld where defendant's embezzlement of funds occurred over a period of nearly five years and constituted repeated acts over a period of time); *United States v. Garcia*, 13 F.3d 1464, 1471 (11th Cir. 1994)(enhancement upheld where the defendants engaged in repeated acts over a period of time); *United States v. Crawford*, 407 F.3d 1174, 1181 (11th Cir. 2005)(enhancement appropriate where defendant involved in over 100 transactions over five-year period). The enhancement for "more than minimal planning" as to the C.S. incident should not have been granted.

The prosecutor also provided a factual proffer as to the W.H. incident.  The prosecutor stated:

> "W.H. was a member of the Unforgiven in July of 2020.  W.H.'s birthday is the first week of July 2020.  On a date on or around his birthday, W.H. was confronted in his home by members of the Unforgiven who came to remove his patch.  W.H. identified Joshua Fisher, Brian Mikkelson, and described two other men in his house.  W.H. identified Shawn Ruark's distinct face tattoos.  W.H. was attacked by the men, including Rurark.  They struck W.H. with hands and weapons.  W.H. described him during the attack.
> W.H. described Mikkelson threatening to burn the patch off with a torch.  And just to be clear, that is an assertion by W.H.  I understand Mr. Mikkelson does not agree to that.  W.H. eventually let the men cover his tattoo for fear that he would be killed if he did not.  Fisher held down W.H. while another member covered the Unforgiven patch on W.H." (DE 1205: 20-21).

As in the case with C.S., the proffer as to the W.H. incident did not establish any attempt by Defendant or his co-defendants to conceal identity or hide evidence.  Likewise, the pre-sentence investigation proffered no evidence showing attempts to conceal identity or hide evidence. (DE 1079: 18, ¶¶69-70).  In fact, as noted in ¶69, W.H.'s roommate witnessed the incident.  The planning for the assault perpetrated on W.H. was typical for the commission of the offense in a simple form.  Additionally, as counsel noted below, there was no issue of repeated behavior since the offense was committed once on W.H. and completed.  The enhancement for "more than minimal planning" as to the W.H. incident should not have been granted.  §2A2.2, comment n.2, U.S.S.G.; *United States v. Tapia,* 59 F.3d 1137, 1144 (11th Cir. 1995).

## II.

## THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING AN UPWARD VARIANCE FROM THE ADVISORY SENTENCING GUIDELINES RANGE

At Defendant's sentencing, the Government requested an upward variance from the guidelines range to 210 months. (DE 1206: 8). Specifically, the prosecutor alluded to the Court's previous sentencing in the same case recognizing that the case amounted to violence for the sake of violence. (DE 1206: 8). The Government maintained that the group used sophisticated communication platforms aimed at avoiding detection. According to the prosecutor, Defendant was tasked with enforcing the objectives of the group, The Unforgiven. (DE 1206: 8-9). The prosecutor argued that the two crimes charged against Defendant were among some of the most brutal the Court heard during trial, pointing out the Court had heard from both victims at trial and had heard from the witnesses. (DE 1206: 9). As to the C.S. incident, the prosecutor argued the Court had heard Jason Woodcock's testimony about Defendant's involvement. As to the W.H, incident, the prosecutor reminded the Court it had heard from W.H.'s roommate, Bellere, who was a member of a parallel organization. (DE 1206: 9). The prosecutor maintained that both crimes were committed in people's homes and where they were victimized. (DE 1206: 9-10). The Government urged the Court to review Defendant's prior criminal history as listed in the pre-sentence investigation report and to pay particular attention to

two violent crimes which did not score because of their age.  The prosecutor related how Defendant was also convicted after he was released from prison and violated his parole. (DE 1206-10).  The prosecutor pointed out Defendant continued to violate the law and ultimately became a member of the Unforgiven.  The prosecutor referred to the testimony of various witnesses that when the indictment came out Maverick Maher fled his residence and did so in Defendant's company. (DE 1206: 11).  The prosecutor noted that when the superseding indictment came out, there were calls from Defendant's wife to Maher about the case.  Defendant was later arrested out of the State of Florida and brought to the Middle District of Florida. (DE 1206: 11).  The Government stated Defendant had not cooperated with law enforcement. (DE 1206: 12).  Lastly, the prosecutor asserted that from a disparity point of view, the Court had sentenced a co-defendant to 190 months who had no prior violent convictions.  She labeled Defendant a "terrorist" and danger to the community. (DE 1206: 12).  Defense counsel responded that he was very reluctant to represent anyone involved in this case. (DE 1206: 13-14).  However, when he met Defendant he found someone who had never had a real opportunity to gain acceptance.  He came from a broken, dysfunctional family.  Defendant agreed to plead openly and put the entire matter behind him.  However, Defendant understands that once in prison he could be targeted by others.  Defendant chose not to cooperate for fear of blow-back in prison. (DE 1206: 14-16).  Defense counsel pointed out that Defendant accepted full

responsibility for what he had done. (DE 1206: 16-17). The defense requested a guidelines sentence because all his conduct and criminal history had been accounted for. (DE 1206: 17-18; DE 1206-19-20).

After Defendant addressed the Court, the Court noted Defendant's long list of criminal offenses. (DE 1206: 22). The Court also pointed out that it was mind-boggling that someone would bring a blow torch to an assault. (DE 1206: 22). The Court stated that cutting up of the victim's "neck for no real purpose other than just violence for its own sake, to terrorize people." (DE 1206: 22). The Court repeated: "To bring a blow torch just boggles my mind that people can do that." (DE 1206: 22). The Court determined that an upward variance was needed. (DE 1206: 24). The Court noted: "So this is just bad – this is violence for violence sake and there's a lot of history here that's not good, assault, carjacking. I'm not going to go through it again. I'm not going to lecture anybody. But to reflect the nature of the offense and the offender and to protect the public from what is a bad record, there is an upward variance needed." (DE 1206: 24). The Court sentenced Defendant to 180 months concurrent on both counts with a three-year term of supervised release. (DE 1206: 24; DE 1241). The defense renewed its objections. (DE 1206: 27).

*Right to a Fundamentally Fair Sentencing Proceeding*

The United States Supreme Court has recognized that a defendant retains due process rights at sentencing. In *Betterman v. Montana*, 578 U.S. 437, 448, 136

S.Ct. 1609, 1617, 194 L.Ed.2d 723 (2016), the Court observed: "After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair." Defendant submits that his due process right to a fundamentally fair sentencing proceeding was violated in this case as noted below.

*Defendant's Inabilty to Confront Information Provided by Government*

At sentencing, the prosecutor repeatedly referred to testimony presented at the co-defendants' trial. The prosecutor referred to (1) the Court's previous statement at a co-defendant's sentencing recognizing that the case amounted to violence for the sake of violence. (DE 1206: 8); (2) the brutality of the two crimes against Defendant as described in the testimony from both victims and other witnesses. (DE 1206: 9); (3) Jason Woodcock's testimony about Defendant's involvement in C.S.'s case and W.H.'s roommate's testimony (DE 1206: 9); the testimony of multiple witnesses that when the indictment came out Maverick Maher fled his residence and did so in Defendant's company. (DE 1206: 11). Neither Defendant nor his counsel were present at the co-defendants' trial and Defendant's counsel had no opportunity to challenge the testimony relied on by the Government and was unable to confront it. The defense was at a distinct disadvantage to contest the Government's assertions. It was improper for the Government to rely on such testimony and unfair for the Court to consider

prosecutor's argument about trial testimony in granting an upward variance. *See United States v. Castellanos*, 904 F.2d 1490, 1496 (11th Cir. 1990)(evidence presented at trial of another may not without more be used to fashion a defendant's sentence if the defendant objects). A defendant's argument for a specific sentence in the district court preserves for appeal his claim that a longer sentence is substantively unreasonable. *Holguin-Hernandez v. United States*, 589 U.S. 169, 173-174, 140 S.Ct. 762, 766-767, 206 L.Ed.2d 95 (2020). In this case, defense counsel requested a guidelines sentence. (DE 1206: 19).

*Improper Use of Co-Defendant's Actions Against Defendant*

The Court pointed out that it was mind-boggling that someone would bring a blow torch to an assault. (DE 1206: 22). The Court repeated: "To bring a blow torch just boggles my mind that people can do that." (DE 1206: 22). It is undisputed that Defendant was *not* the person who brought the blow-torch to the assault. The record shows the Court clearly considered *the co-defendant's act* in bringing a blow-torch to the assault and that such act merited an upward variance in this case. Indeed, this appeared to be the Court's overarching reason for imposing an upward variance. It was fundamentally unfair to have Defendant's sentence measured by a co-defendant's act especially when it was apparent that Defendant had nothing to do with the co-defendant's decision to bring and threaten to use the blow-torch. Although §1B1.3(a)(1), U.S.S.G., provides that relevant

conduct includes all reasonably foreseeable acts and omissions of others in furtherance of jointly undertaken criminal activity that occurred during the commission of the offense of conviction, there was no evidence or testimony presented that Defendant knew or was even aware that the co-defendant was going to bring a blow-torch to the assault. The co-defendant's act was not "reasonably foreseeable." In fact, the district court made clear that it was "mind-boggling" that anyone would do so. Therefore, it was improper to ascribe to Defendant the co-defendant's act of bringing a blow-torch to the assault.

*Unreasonable Extent of Variance*

The Court sentenced Defendant to 180 months, which represented a 65-month increase from the top of the corresponding sentencing guidelines.[3] Sentences outside are not entitled to presumption of reasonableness. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). When a district court imposes a sentence outside the advisory guidelines range, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance. *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008)(quoting *Gall v. United States*, 552 U.S. 38, 50, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007)). This Court must give due deference to

---

[3] The Court found the total offense level at 27, the criminal history category at IV and an advisory range of 100 to 125 months imprisonment with a one-year term of supervised release. (DE 1206: 8).

the district court's determination that the §3553(a) factors on the whole justify the extent of the variance.  The justification must be sufficiently compelling to support the degree of the variance. *United States v. Irey*, 612 F.3d 1160, 1196 (11th Cir. 2010(*en banc*)(quoting *Gall*, 552 U.S. at 50, 128 S.Ct. at 597).  Although there is no proportionality principle in sentencing, a major variance does require a more significant justification than a minor one. *See United States v. Steiger*, 107 F.4th 1315, 1321 (11th Cir. 2014)(quoting *United States v. Irey*, 612 F.3d at 1196).   In this case, the district court relied heavily on Defendant's prior record, but as defense counsel pointed out, Defendant's prior record was a matter which had been thoroughly accounted for in the calculating the advisory sentencing range. (DE 1206: 17-18).  More importantly, the Court did not explicitly find that an upward variance was reasonable because the Guidelines range understated the seriousness of Defendant's criminal history. *Compare United States v. Johnson*, 803 F.3d 610, 619 (11th Cir. 2015)(district court's decision to impose upward variance upheld where court specifically determined that advisory guidelines range "did not adequately account for [defendant's] conduct").

25

## **<u>CONCLUSION</u>**

Based on the foregoing, Defendant requests that this Court vacate the district court's sentence and remand the case for re-sentencing.

Respectfully submitted,

LAW OFFICES OF
J. RAFAEL RODRÍGUEZ
Attorneys for Shawn Ruark
6367 Bird Road
Miami, FL   3315501
(305) 667-4445
(305) 667-4118 (FAX)
jrafrod@bellsouth.net

By: *s/ J. Rafael Rodríguez*
      J. RAFAEL RODRÍGUEZ
      FLA. BAR NO. 302007

## <u>CERTIFICATE OF COMPLIANCE</u>

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of Rule 32(a)(7)(B), Federal Rules of Appellate Procedure because it contains 6,090 words, excluding the parts of the brief exempted by 32-4, 11th Cir. R.

This brief also complies with the requirements of Rule 32(a)(5) and (a)(6), Federal Rules of Appellate Procedure, because it has been prepared in a proportionally spaced typeface using Microsoft Word, 14 times Roman.

*s/ J. Rafael Rodríguez*
J. RAFAEL RODRÍGUEZ, ESQ.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing brief was filed using CM/ECF on this 18th day of September, 2024, and served on CM/ECF on Collette B. Cunningham, Esq., Office of the United States Attorney, 300 N. Hogan Street, Suite 700, Jacksonville, FL 32202.

*s/ J. Rafael Rodríguez*
J. RAFAEL RODRÍGUEZ, ESQ.
Counsel for Appellant
