# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

CASE NO. 24-11672-A

DISTRICT COURT CASE NO. 8:21-cr-00218-WFJ-AAS-17

UNITED STATES OF AMERICA,

Appellee,

v.

SHAWN RUARK,

Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

## **APPENDIX**

J. RAFAEL RODRÍGUEZ, ESQ.
LAW OFFICES OF
J. RAFAEL RODRÍGUEZ
6367 Bird Road
Miami, Florida 33155
(305) 667-4445
(305) 667-4118 (FAX)
jrafrod@bellsouth.net

*Counsel for Appellant*

# **INDEX OF APPENDIX**

|                                      | Docket/Tab # |
| ------------------------------------ | ------------ |
| DISTRICT COURT DOCKET                | ..A          |
| INDICTMENT                           | ..665        |
| NOTICE OF APPEAL                     | ..1122       |
| TRANSCRIPT OF SENTENCING HEARING     | ..1206       |
| JUDGMENT IN CRIMINAL CASE            | ..1241       |
| CERTIFICATE OF SERVICE               |              |

A

APPEAL,SL DOC

# U.S. District Court
## Middle District of Florida (Tampa)
### CRIMINAL DOCKET FOR CASE #: 8:21-cr-00218-WFJ-AAS-17

Case title: USA v. Maher et al

Date Filed: 07/01/2021

Date Terminated: 05/23/2024

Assigned to: Judge William F. Jung
Referred to: Magistrate Judge Amanda
Arnold Sansone

Appeals court case number: 24-11672-A
Eleventh Circuit

### Defendant (17)

**Shawn Ruark**
*TERMINATED: 05/23/2024*
*also known as*
Nazi
*TERMINATED: 05/23/2024*

represented by **Jason Matthew Mayberry**
Mayberry Law Firm, LLC
402 E. 7th Ave
Tampa, FL 33602
813-444-7435
Fax: 727-755-0098
Email: jason@mayberryfirm.com
*TERMINATED: 05/24/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: CJA Appointment

**Jose Rafael Rodriguez**
Law Office of J. Rafael Rodriguez
6367 Bird Rd
Miami, FL 33155-4825
305/667-4445
Fax: 305/667-4118
Email: jrafrod@bellsouth.net
*ATTORNEY TO BE NOTICED*
Designation: CJA Appointment

### Pending Counts

ASSAULT, OTHER
(12-13)

### Disposition

Imprisonment: 180 Months. This term
consists of a 180-month term as to Count
12 and a 180-month term as to Count 13,
both terms to run concurrently; Supervised
Release: 36 Months; Special Assessment:
$200.00

**<u>Highest Offense Level (Opening)</u>**

Felony

| **<u>Terminated Counts</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

**<u>Highest Offense Level (Terminated)</u>**

None

| **<u>Complaints</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

---

**<u>Third Party Custodian</u>**

**Joyce Thompson**

---

**<u>Plaintiff</u>**

**USA**            represented by    **David P. Sullivan**
DOJ-USAO
400 N. Tampa St.
Suite 3200
Tampa, FL 33908
813-274-6000
Fax: 813-274-6200
Email: david.sullivan3@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Samantha Elizabeth Beckman**
DOJ-USAO
Tampa Division
400 North Tampa Street
Suite 3200
Tampa, FL 33602
813-274-6000
Email: samantha.beckman@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maria Guzman**
US Attorney's Office - FLM
Suite 3200
400 N Tampa St

Tampa, FL 33602-4798
813-274-6000
Email: Maria.Guzman@usdoj.gov
*TERMINATED: 04/17/2023*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Natalie Hirt Adams AUSA**
US Attorney's Office - FLM
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798
813-301-3086
Email: natalie.adams@usdoj.gov
*TERMINATED: 01/11/2022*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/01/2023 | 665 | SUPERSEDING INDICTMENT returned in open court as to Maverick Maher (1) count(s) 2s, 4s, 6s, 7s-8s, 9s, 12s-13s, Joshua Fisher (2) count(s) 2s, 3s, 4s-5s, 7s, 12s-14s, Brandon Welch (10) count(s) 1s, Joshua Williamson (11) count(s) 1s, Scott Marshall (15) count(s) 10s, 11s, Shawn Ruark (17) count(s) 12-13, Jason Woodcock (18) count(s) 12, Brian Mikkelson (19) count(s) 13-14, John Edward Moore (20) count(s) 14. (Attachments: # 1 Restricted Unredacted Superseding Indictment) (LNR) (Entered: 03/03/2023) |
| 03/03/2023 | 676 | **ORDER as to Shawn Ruark, Jason Woodcock, Brian Mikkelson, John Edward Moore: Pursuant to the Due Process Protections Act, the Court confirms the United States' obligation to produce all exculpatory evidence to the defendant pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and orders the United States to do so. Failing to do so in a timely manner may result in consequences, including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, and sanctions. Signed by Judge Timothy J. Corrigan on 12/1/2020. (LNR) (Entered: 03/03/2023)** |
| 03/03/2023 | 677 | **ENDORSED ORDER as to Maverick Maher, Joshua Fisher, Levi Sharp, George Andrews, II, James Mapoles, Brandon Welch, Joshua Williamson, Joshua Hall, Jarrett Arnold, Scott Marshall, Shawn Ruark, Jason Woodcock, Brian Mikkelson, John Edward Moore. Defendants must file a written status report by close of business on Wednesday, March 8, 2023. Signed by Judge William F. Jung on 3/3/2023. (CCB) (Entered: 03/03/2023)** |
| 04/17/2023 | 743 | Notice of substitution of AUSA. David P. Sullivan substituting for Maria Guzman. (Sullivan, David) (Entered: 04/17/2023) |
| 04/20/2023 | 747 | **ENDORSED ORDER - Parties who object to the 745 MOTION to Continue trial filed by Maverick Maher, shall file a response within seven (7) days of this Order. Signed by Judge William F. Jung on 4/20/2023. (CAH) (Entered: 04/20/2023)** |

| | | |
|---|---|---|
| 04/28/2023 | 752 | **ORDER as to all parties going to trial. The Court will set a telephonic status conference for next week. Before that hearing, the parties should confer among themselves on these issues: When should trial be set? Also, given the number of defendants going to trial, should the court sever the case in two, meaning sever defendants (not counts) for two separate trials? If severance is appropriate, how ought the division go? Signed by Judge William F. Jung on 4/28/2023. (Jung, William) (Entered: 04/28/2023)** |
| 05/02/2023 | 756 | Arrest Warrant Returned Executed on 5/2/2023 as to Shawn Ruark. (SET) (Entered: 05/02/2023) |
| 05/02/2023 | | Arrest of Shawn Ruark in Western District of North Carolina. (LNR) (Entered: 05/09/2023) |
| 05/05/2023 | 760 | **ORDER granting 745 Motion to Continue as to all defendants going to trial as discussed at the status call. See Doc. 759. Signed by Judge William F. Jung on 5/5/2023. (Jung, William) Modified on 5/5/2023 (Jung, William). (Entered: 05/05/2023)** |
| 05/05/2023 | 761 | NOTICE OF RESCHEDULING HEARING: The criminal status conference previously scheduled for 5/11/2023 and jury trial previously scheduled for the trial term of 6/5/2023 are rescheduled as to all Defendants going to trial--- Maverick Maher, Joshua Fisher, Brandon Welch, Joshua Williamson, Scott Marshall, Shawn Ruark, Jason Woodcock, Brian Mikkelson, John Edward Moore. New hearing date and time: Status Conference set for 12/14/2023 at 10:00 AM IN-PERSON in Tampa Courtroom 15 B before Judge William F. Jung. Jury Trial set for DATE CERTAIN Monday, 2/12/2024 at 9:00 AM in Tampa Courtroom 15 B before Judge William F. Jung. (CCB) (Entered: 05/05/2023) |
| 05/08/2023 | 763 | Rule 5(c)(3) documents received from the Western District of North Carolina as to Shawn Ruark which includes: Docket Sheet, Commitment to Another District, Waiver of Rule 5 or 32.1 Hearings, Order of Detention. (Attachments: # 1 Waiver of Rule 5(c)(3) Hearings, # 2 Order of Detention, # 3 Commitment to Another District) (LNR) (Entered: 05/09/2023) |
| 05/10/2023 | 765 | **ORDER as to Maverick Maher, Joshua Williamson, Scott Marshall, Shawn Ruark, Jason Woodcock, Brian Mikkelson, John Edward Moore directing counsel to file waiver of appearance at deposition. Signed by Magistrate Judge Amanda Arnold Sansone on 5/10/2023. (CDM) (Entered: 05/10/2023)** |
| 06/09/2023 | 791 | ORAL MOTION to Appoint Counsel by Shawn Ruark. (EJC) (Entered: 06/16/2023) |
| 06/09/2023 | 792 | **ORAL ORDER granting 791 Motion to Appoint Counsel. Jason Matthew Mayberry, CJA appointed as to Shawn Ruark (17). Signed by Magistrate Judge Sean P. Flynn on 6/9/2023. (EJC) (Entered: 06/16/2023)** |
| 06/09/2023 | 793 | ORAL MOTION for Rule 16(a) Discovery by Shawn Ruark. (EJC) (Entered: 06/16/2023) |
| 06/09/2023 | 794 | ORAL MOTION for Rule 16(b) Discovery by USA as to Shawn Ruark. (EJC) (Entered: 06/16/2023) |
| 06/09/2023 | 795 | ORAL MOTION for Medical Exam by Shawn Ruark. (EJC) Motions referred to Magistrate Judge Amanda Arnold Sansone. (Entered: 06/16/2023) |

| 06/09/2023 | 796 | NOTICE of Standing Order Regarding Due Process Protections Act, 3:20-mc-20-TJC, Doc 1 as to Shawn Ruark: Pursuant to the Due Process Protections Act, the Court confirms the United States' disclosure obligation under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and orders the United States to comply with that obligation. Violating this order may result in consequences, including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, and other sanctions. Signed by Judge Timothy J. Corrigan. (EJC) (Entered: 06/16/2023) |
|---|---|---|
| 06/09/2023 | 797 | Minute Entry for In Person proceedings held before Magistrate Judge Sean P. Flynn: ORAL ORDER granting 793 Motion for Rule 16(a) Discovery by Shawn Ruark (17); granting 794 Motion for Rule 16(b)Discovery by USA as to Shawn Ruark (17); granting 795 Motion for Medical Exam as to Shawn Ruark (17); ARRAIGNMENT as to Shawn Ruark (17) Count 12-13, held on 6/9/2023 Defendant pled not guilty; Attorney Appointment Hearing as to Shawn Ruark held on 6/9/2023. (DIGITAL) (Interpreter/Language: N/A) (EJC) (Entered: 06/16/2023) |
| 06/09/2023 | 798 | **ORDER Medical Exam as to Shawn Ruark. Signed by Magistrate Judge Sean P. Flynn on 6/9/2023. (EJC)** (Entered: 06/16/2023) |
| 06/20/2023 | 799 | **PRETRIAL discovery order and notice as to Shawn Ruark. Jury Trial set for trial term commencing 8/7/2023 at 09:00 AM in Tampa Courtroom 15 B before Judge William F. Jung. Telephonic Status Conference set for 7/13/2023 at 11:00 AM before Judge William F. Jung. Signed by Magistrate Judge Amanda Arnold Sansone on 6/20/2023. (CDM)** (Entered: 06/20/2023) |
| 06/21/2023 | 801 | First MOTION to Continue trial by Shawn Ruark. (Mayberry, Jason) (Entered: 06/21/2023) |
| 06/22/2023 | 802 | **ENDORSED ORDER granting 801 Motion to Continue as to Shawn Ruark (17). Pursuant to 18 U.S.C. § 3161(h)(7)(a), the Court finds that the ends of justice served by a continuance outweigh the best interest of the public and the defendant in a speedy trial, reasons being to permit both sides to adequately prepare for trial and resolve issues pertinent thereto. This time is, therefore, deemed EXCLUDABLE until trial. Jury Trial set for the February 2024 Trial Term commencing 2/5/2024 at 09:00 AM in Tampa Courtroom 15 B before Judge William F. Jung. Status Conference set for 12/14/2023 at 11:00 AM before Judge William F. Jung. Signed by Judge William F. Jung on 6/22/2023. Counsel are directed to call the reserved conference toll-free number at 1-888-557-8511. Enter the access code: 4744914 followed by the # (pound) key. You will be prompted to enter the security code: 1214 followed by the # (pound) key. Please call in at least 10 minutes before the scheduled hearing. (JCG)** (Entered: 06/22/2023) |
| 07/28/2023 | 831 | TRANSCRIPT of change of plea as to Levi Sharp, held on 2/16/23 before Judge Amanda Arnold Sansone. Court Reporter/Transcriber: Rebecca Sabo. Email address: Rebecca_Sabo@flmd.uscourts.gov. Telephone number: 14068556410.

NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or |

| | | |
|---|---|---|
| | | purchased through the Court Reporter. Redaction Request due 8/18/2023. Redacted Transcript Deadline set for 8/28/2023. Release of Transcript Restriction set for 10/26/2023. (RMS) Modified on 8/2/2023 (DAY). (Entered: 07/28/2023) |
| 08/31/2023 | 842 | **ENDORSED ORDER as to Maverick Maher, Joshua Fisher, Levi Sharp, George Andrews, II, James Mapoles, David Howell, Ryann Howard, Ryan McLaughlin, Darrin Terranova, Brandon Welch, Joshua Williamson, Steve Anderson, Joshua Hall, Jarrett Arnold, Scott Marshall, William Walker, Shawn Ruark, Jason Woodcock, Brian Mikkelson, John Edward Moore, Parties have until Thursday, September 7, 2023 to file any objections to the deposition of Jason Terry (Dkt. 787) being made remotely available to the public without redaction as of September 11, 2023. Signed by Magistrate Judge Amanda Arnold Sansone on 8/31/2023. (CDM)** (Entered: 08/31/2023) |
| 11/13/2023 | 865 | NOTICE OF HEARING as to ALL DEFENDANTS GOING TO TRIAL: Jury Trial is set for February 12, 2024 (SPECIAL SETTING) at 09:00 AM in Tampa Courtroom 17 before Judge William F. Jung. Status Conference set for 12/14/2023 at 10:00 AM IN-PERSON in Tampa Courtroom 15 B before Judge William F. Jung (JCG) (Entered: 11/13/2023) |
| 12/14/2023 | 887 | Minute Entry for In Person proceedings held before Judge William F. Jung: STATUS Conference Regarding Counsel as to Maverick Maher, Joshua Fisher, Brandon Welch, Joshua Williamson, Scott Marshall, Shawn Ruark, Jason Woodcock, Brian Mikkelson, John Edward Moore held on 12/14/2023. Court Reporter: Tracey Aurelio (JCG) (Entered: 12/14/2023) |
| 01/04/2024 | 904 | NOTICE OF HEARING as to Shawn Ruark: Change of Plea Hearing set for 1/12/2024 at 03:00 PM in Tampa Courtroom 15 B before Judge William F. Jung. (JCG) (Entered: 01/04/2024) |
| 01/11/2024 | 914 | **TRIAL CALENDAR for trial term FEBRUARY 2024 as to Maverick Maher, Brandon Welch, Joshua Williamson, Scott Marshall, Shawn Ruark, Brian Mikkelson Jury Trial is set for DATE CERTAIN 2/12/2024 at 09:00 AM in Tampa Courtroom 15 B before Judge William F. Jung. Signed by Judge William F. Jung on 1/11/2024. (JCG)** (Entered: 01/11/2024) |
| 01/12/2024 | 921 | Minute Entry for In Person proceedings held before Judge William F. Jung: Change of Plea Hearing as to Shawn Ruark held on 1/12/2024. Court Reporter: Tracey Aurelio (JCG) (Entered: 01/12/2024) |
| 01/23/2024 | 933 | **ENDORSED ORDER granting 928 Motion to Amend as to Brandon Welch (10), Joshua Williamson (11). As to all trial defendants the protective order is changed to "20 days" from "10 days." Signed by Judge William F. Jung on 1/23/2024. (Jung, William)** (Entered: 01/23/2024) |
| 01/29/2024 | 941 | **ENDORSED ORDER NEW TRIAL DATE as to trial defendants. The trial will now start at 9:00 am on February 20, 2024. Mr. Maher's counsel had developed an unexpected trial conflict with a murder case and the undersigned just discussed the matter with the Pinellas County Circuit Judge. Doc. 939 is construed as a motion for brief continuance due to this conflict, and it is granted. Under the Speedy Trial Act, the ends of justice in delaying the trial due to this conflict are served by taking this action which outweigh the best interest of the public and the other defendants in a speedy trial. The time is excluded under 18 U.S.C. 3161(h)(7)(A). Signed by Judge William F. Jung on 1/29/2024.** |

| | | (Jung, William) (Entered: 01/29/2024) |
|---|---|---|
| 01/29/2024 | 948 | PROPOSED Voir Dire by USA as to Maverick Maher, Joshua Fisher, Levi Sharp, George Andrews, II, James Mapoles, David Howell, Ryann Howard, Ryan McLaughlin, Darrin Terranova, Brandon Welch, Joshua Williamson, Steve Anderson, Joshua Hall, Jarrett Arnold, Scott Marshall, William Walker, Shawn Ruark, Jason Woodcock, Brian Mikkelson, John Edward Moore (Beckman, Samantha) (Entered: 01/29/2024) |
| 02/15/2024 | 964 | NOTICE *of Filing Declaration of Authentication of Business Records* by USA as to Maverick Maher, Joshua Fisher, Levi Sharp, George Andrews, II, James Mapoles, David Howell, Ryann Howard, Ryan McLaughlin, Darrin Terranova, Brandon Welch, Joshua Williamson, Steve Anderson, Joshua Hall, Jarrett Arnold, Scott Marshall, William Walker, Shawn Ruark, Jason Woodcock, Brian Mikkelson, John Edward Moore. (Attachments: # 1 Exhibit 1 -Medical records certification, # 2 Exhibit 2 - Use of force certification, # 3 Exhibit 3 - Decontamination videos certification) (Sullivan, David) (Entered: 02/15/2024) |
| 02/20/2024 | 973 | **Electronics ORDER as to Defense Witness Thomas Dawe. Signed by Judge William F. Jung on 2/20/2024. (CCB)** (Entered: 02/20/2024) |
| 03/26/2024 | 1051 | RULE 32(e)(2) INITIAL PRESENTENCE INVESTIGATION REPORT as to Shawn Ruark. E-copies made available to selected parties.(KT) (Entered: 03/26/2024) |
| 04/30/2024 | 1079 | RULE 32(g) FINAL PRESENTENCE INVESTIGATION REPORT as to Shawn Ruark. E-copies made available to selected parties.(JIS) (Entered: 04/30/2024) |
| 05/22/2024 | 1117 | Minute Entry for In Person proceedings held before Judge William F. Jung: SENTENCING held on 5/22/2024 for Shawn Ruark (17), Counts 12 and 13, Imprisonment: 180 Months. This term consists of a 180-month term as to Count 12 and a 180-month term as to Count 13, both terms to run concurrently; Supervised Release: 36 Months; Special Assessment: $200.00. Court Reporter: Tracey Aurelio (JCG) (Entered: 05/23/2024) |
| 05/22/2024 | 1118 | Letter from the Defendant's wife admitted during sentencing by Shawn Ruark. (JCG) Modified on 5/28/2024 to unseal document (JCG). (Entered: 05/23/2024) |
| 05/23/2024 | 1119 | **JUDGMENT as to Shawn Ruark (17), Counts 12 and 13, Imprisonment: 180 Months. This term consists of a 180-month term as to Count 12 and a 180-month term as to Count 13, both terms to run concurrently; Supervised Release: 36 Months; Special Assessment: $200.00. Signed by Judge William F. Jung on 5/23/2024. (JCG)** (Entered: 05/23/2024) |
| 05/23/2024 | 1120 | STATEMENT OF REASONS as to Shawn Ruark. E-copies made available to selected parties. (JCG) (Entered: 05/23/2024) |
| 05/23/2024 | 1122 | NOTICE OF APPEAL by Shawn Ruark re 1119 Judgment. Filing fee not paid (Mayberry, Jason) (Entered: 05/23/2024) |
| 05/23/2024 | 1123 | First MOTION to Withdraw as Attorney by Jason Mayberry. by Shawn Ruark. (Mayberry, Jason) Motions referred to Magistrate Judge Amanda Arnold Sansone. (Entered: 05/23/2024) |
| 05/23/2024 | 1129 | TRANSMITTAL of initial appeal package as to Shawn Ruark to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 1122 Notice of Appeal. Eleventh Circuit Transcript |

| | | |
|---|---|---|
| | | information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (BD) (Entered: 05/23/2024) |
| 05/24/2024 | | USCA Case Number as to Shawn Ruark. USCA Number: 24-11672-A for 1122 Notice of Appeal filed by Shawn Ruark. (SET) (Entered: 05/24/2024) |
| 05/24/2024 | 1132 | **ORDER granting 1123 Motion to Withdraw as Attorney Jason Matthew Mayberry withdrawn from case. as to Shawn Ruark (17). Signed by Magistrate Judge Amanda Arnold Sansone on 5/24/2024. (ABC)** (Entered: 05/24/2024) |
| 05/24/2024 | 1133 | **ENDORSED ORDER of Appointment of CJA Counsel as to Shawn Ruark: Appointment of Attorney Jose Rafael Rodriguez for Shawn Ruark. Signed by Magistrate Judge Amanda Arnold Sansone on 5/24/2024. (ABC)** (Entered: 05/24/2024) |
| 05/28/2024 | 1144 | **ENDORSED ORDER as to Shawn Ruark. The Clerk is directed to unseal Doc. 1118 SEALED Document filed by Shawn Ruark. Signed by Judge William F. Jung on 5/28/2024. (JCG)** (Entered: 05/28/2024) |
| 06/06/2024 | 1169 | TRANSCRIPT information form filed by Shawn Ruark for proceedings held on 12-14-23, 5-22-24, 1-12-24 before Judge William F. Jung re 1122 Notice of Appeal. USCA number: 24-11672-A. Electronic notification sent to Court Reporter Tracy Aurelio (Rodriguez, Jose) (Entered: 06/06/2024) |
| 06/13/2024 | 1173 | COURT REPORTER ACKNOWLEDGMENT by TRACEY AURELIO re 1122 Notice of Appeal as to Shawn Ruark. Estimated transcript filing date: 7/7/24. USCA number: 24-11672-A. (TVA) (Entered: 06/13/2024) |
| 07/09/2024 | 1204 | TRANSCRIPT of Status Conference for dates of 12/14/23 held before Judge WILLIAM F. JUNG, re: 1122 Notice of Appeal as to Shawn Ruark. Court Reporter/ Transcriber: TRACEY AURELIO. Email address: tracey_aurelio@flmd.uscourts.gov. Telephone number: 6186969780.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 7/30/2024. Redacted Transcript Deadline set for 8/9/2024. Release of Transcript Restriction set for 10/7/2024. (TVA) (Entered: 07/09/2024) |
| 07/09/2024 | 1206 | TRANSCRIPT of SENTENCING HEARING for dates of 5/22/24 held before Judge WILLIAM F. JUNG, re: 1122 Notice of Appeal as to Shawn Ruark. Court Reporter/ Transcriber: TRACEY AURELIO. Email address: tracey_aurelio@flmd.uscourts.gov. Telephone number: 8133015448.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release |

| | | |
|---|---|---|
| | | of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 7/30/2024. Redacted Transcript Deadline set for 8/9/2024. Release of Transcript Restriction set for 10/7/2024. (TVA) (Entered: 07/09/2024) |
| 07/09/2024 | 1207 | NOTIFICATION that transcripts have been filed by Tracey Aurelio re: 1122 Notice of Appeal as to Shawn Ruark. USCA number: 24-11672-A. (TVA) (Entered: 07/09/2024) |
| 08/06/2024 | | TRANSMITTAL to USCA forwarding replacement copy of Dkt. 103 (DVD exhibit presented at trial) re 1156 Notice of Appeal, 1159 Notice of Appeal; USCA number: 24-11798-AA. (KE) (Entered: 08/06/2024) |
| 08/22/2024 | 1241 | Judgment Returned Executed as to Shawn Ruark on 8/14/2024. Institution: USP McCreary. (LD) (Entered: 08/23/2024) |

# INDICTMENT
# (DE 665)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

MAVERICK MAHER,
    a/k/a "SAXON",
JOSHUA FISHER,
    a/k/a "HAMMER",
BRANDON WELCH,
    a/k/a "SCUMBAG",
JOSHUA WILLIAMSON,
    a/k/a "CHAIN GANG",
SCOTT MARSHALL
    a/k/a "SOLO",
SHAWN RUARK,
    a/k/a "NAZI",
JASON WOODCOCK,
    a/k/a "JAYBIRD",
BRIAN MIKKELSON,
    a/k/a "CRASH", and
JOHN EDWARD MOORE
    a/k/a "CRACKER JOHN"

CASE NO. 8:21-cr-218-WFJ-AAS
18 U.S.C. § 1959(a)(3)
18 U.S.C. § 1959(a)(1)
18 U.S.C. § 1959(a)(6)
18 U.S.C. § 1959(a)(4)

## SUPERSEDING INDICTMENT

The Grand Jury charges:

## INTRODUCTION

### A. The Enterprise

1.    At various times relevant to this Indictment, the defendants,

MAVERICK MAHER,
   a/k/a "SAXON",
JOSHUA FISHER,
   a/k/a "HAMMER",
BRANDON WELCH,
   a/k/a "SCUMBAG",
JOSHUA WILLIAMSON,
   a/k/a "CHAIN GANG",
  SCOTT MARSHALL,
   a/k/a "SOLO",
SHAWN RUARK,
   a/k/a "NAZI",
JASON WOODCOCK,
   a/k/a "JAYBIRD",
BRIAN MIKKELSON,
   a/k/a "CRASH" and
JOHN EDWARD MOORE
   a/k/a "CRACKER JOHN"

and others known and unknown to the Grand Jury, were members and associates of the Unforgiven, a criminal organization whose members and associates engaged in acts of violence, including acts and threats involving murder, kidnapping, robbery, as well as dealing in a controlled substance and obstructing justice, and which operated in the Middle District of Florida and elsewhere.

2.    The Unforgiven, including its leadership, membership, and associates, constituted an "enterprise" as defined in 18 U.S.C. § 1959(b)(2) (hereinafter, "the Enterprise") that is, a group of individuals associated in fact, although not a legal entity, which is engaged in, and whose activities affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members

2

functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### B. Purposes of the Enterprise

3. The purposes of the Enterprise included the following:

a. Propagating "Aryan Philosophy";

b. Preserving and expanding the power, territory, and reputation of the Enterprise through recruitment, indoctrination of white supremacist ideology, pursuit of business and political leadership, intimidation, and threats and acts of violence;

c. Keeping rivals in fear of the Enterprise and in fear of its members and associates through threats and acts of violence;

d. Enriching the members and associates of the Enterprise through, among other things, distribution of weapons, narcotics, and contraband;

e. "[C]reat[ing] a front to resist and rebel" against a perceived "constant and almost brutal victimization of Whites" in the Florida Department of Corrections; and

f. Protecting Enterprise members by concealing, destroying evidence of, and threatening or retaliating against witnesses to, its illegal activities.

4. The above-described Enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), namely:

3

    a. acts and threats involving murder, in violation of Sections 782.04, 777.011, and 777.04 of the Florida Statutes;

    b. acts and threats involving kidnapping, in violation of Sections 787.01(1)(a), 777.011, and 777.04 of the Florida Statutes;

    c. acts involving robbery, in violation of Sections 812.13(1), 777.011, and 777.04 the Florida Statutes;

acts indictable under the following provisions of federal law:

    d. 18 U.S.C. § 1503 (relating to obstruction of justice); and

    e. 18 U.S.C. § 1512 (relating to tampering with witnesses, victims, or informants);

and offenses involving the felonious manufacture, receiving, concealment, buying, selling, and otherwise dealing in controlled substances or listed chemicals, in violation of:

    f. 21 U.S.C. § 841 (distributing and possessing with intent to distribute controlled substances); and

    g. 21 U.S.C. § 846 (conspiracy and attempt to distribute and possess with intent to distribute controlled substances).

### C.   Means and Methods

    5.    Among the means and methods by which the defendants and other Enterprise members and associates agreed to conduct and to participate in the conduct of the affairs of the Enterprise were the following:

4

a.     Members and associates of the Enterprise would and did require the study of "Aryan Philosophy," and the commission of acts of extreme violence as a prerequisite to membership in the Enterprise;

b.     Members and associates of the Enterprise would and did strive to retain and recruit members, and to disseminate their ideology throughout the United States and abroad, and to future generations;

c.     Members and associates of the Enterprise would and did expect all members to follow orders of senior members within the Enterprise;

d.     Members and associates of the Enterprise would and did expect all members to be battle-ready at all times;

e.     Members and associates of the Enterprise would and did promote a climate of fear in non-members or non-conforming members through threats and acts of violence;

f.     Members and associates of the Enterprise would and did disseminate and seek to enforce compliance—through violence if necessary—with a constitution and bylaws;

g.     Members and associates of the Enterprise would and did expect all members to take an oath to the Enterprise's constitution, and would and did deem violators of the constitution to be "traitors" who would "be dealt with in the most extreme form";

5

h.      Members and associates of the Enterprise would and did kidnap,
assault, batter, and stab members and associates of the Enterprise who did not abide
by Enterprise rules;

i.      Members and associates of the Enterprise would and did require
demonstrations of loyalty to the Enterprise, including but not limited to committing
acts of violence, getting "patches" (tattoos bearing a swastika, Iron Cross, and S.S.
bolts), paying dues, learning hand signs and code words and phrases, and attending
"Church" (enterprise meetings);

j.      Members and associates of the Enterprise would and did acquire,
share, and distribute controlled substances and weapons;

k.      Members and associates of the Enterprise would and did provide
contraband to members and associates during periods of incarceration to promote
and expand Enterprise members' power, status, and loyalty;

l.      Members and associates of the Enterprise would and did require
Enterprise Members to commit acts of violence in retaliation for any disrespect
shown to the Enterprise or its members;

m.      Members and associates of the Enterprise would and did seek to
attain, maintain, and increase status in the Enterprise by, and attribute status to,
participation in acts of violence, and would and did tout acts of violence they had
committed;

6

n.    Members and associates of the Enterprise would and did use interstate wire and electronic communications, and other facilities of interstate commerce, to promote and conduct the affairs of the Enterprise;

o.    Members and associates of the Enterprise would and did create a political branch called Route 21, in an attempt to disguise the white supremacist roots of its political activity;

p.    Members and associates of the Enterprise would and did attempt to use corrupt law enforcement officers and state employees to gather information about members and probates, and about the investigation and impending prosecution of its members and associates, and to smuggle contraband to incarcerated inmates;

q.    Members and associates of the Enterprise would and did obstruct and attempt to obstruct justice and would and did tamper with and attempt to tamper with witnesses by intimidation, threats, and acts of violence; and

r.    Members and associates of the Enterprise would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of, and acts done in furtherance of, the illegal purposes and activities of the Enterprise.

## COUNT ONE
### (Assault in Aid of Racketeering Activity)

1.    Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

2.    On or about January 2, 2019, in the Columbia Correctional Institution,

7

in the Middle District of Florida, the defendants,

BRANDON WELCH,
a/k/a "SCUMBAG", and
JOSHUA WILLIAMSON,
a/k/a "CHAIN GANG",

while aiding and abetting each other, for the purpose of gaining entrance to and maintaining and increasing position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully and knowingly committed an assault with a dangerous weapon and an assault resulting in serious bodily injury to J.T., in violation of Fla. Stat. §§ 784.021, 777.011, and 784.045.

In violation of 18 U.S.C. §§ 1959(a)(3) and 2.

## COUNT TWO
### (Assault in Aid of Racketeering Activity)

1.      Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

2.      On or about January 18, 2019, in the Middle District of Florida, the defendants,

MAVERICK MAHER,
a/k/a "SAXON", and
JOSHUA FISHER,
a/k/a "HAMMER",

while aiding and abetting each other, for the purpose of gaining entrance to and maintaining and increasing position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully and knowingly committed an assault with a

8

dangerous weapon and an assault resulting in serious bodily injury to C.L., in violation of Fla. Stats. §§ 784.045 and 777.011.

In violation of 18 U.S.C. §§ 1959(a)(3) and 2.

## COUNT THREE
### (Kidnapping in Aid of Racketeering Activity)

1.     Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

2.     On or about January 18, 2019, in the Middle District of Florida, the defendants,

**JOSHUA FISHER,**
**a/k/a "HAMMER"**

while aiding and abetting each other, for the purpose of gaining entrance to and maintaining and increasing position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully and knowingly kidnapped C.L., in violation of Fla. Stats. §§ 787.01(1)(a) and 777.011.

In violation of 18 U.S.C. §§ 1959(a)(1) and 2.

## COUNT FOUR
### (Conspiracy to Commit Assault in Aid of Racketeering Activity)

1.     Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

2.     Between in or around January 2019 and continuing until at least in or around July 2019, in the Middle District of Florida and elsewhere, the defendants,

9

MAVERICK MAHER,
a/k/a "SAXON", and

JOSHUA FISHER,
a/k/a "HAMMER,"

and others known and unknown to the Grand Jury, for the purpose of gaining

entrance to and maintaining and increasing position in the Unforgiven, an enterprise

engaged in racketeering activity, unlawfully and knowingly conspired to commit

assault with a dangerous weapon against and assault resulting in serious bodily

injury to T.B., in violation of Fla. Stat. §§ 784.021, 784.045, and 777.04.

In violation of 18 U.S.C. § 1959(a)(6).

## COUNT FIVE
**(Conspiracy to Commit Assault in Aid of Racketeering Activity)**

1.      Paragraphs One through Five of the Introduction are realleged and

incorporated by reference as though fully set forth herein.

2.      On or about February 1, 2019, in the Middle District of Florida and

elsewhere, the defendants,

JOSHUA FISHER,
a/k/a "HAMMER",

and others known and unknown to the Grand Jury, for the purpose of gaining

entrance to and maintaining and increasing position in the Unforgiven, an enterprise

engaged in racketeering activity, unlawfully and knowingly conspired to commit

assault with a dangerous weapon against and assault resulting in serious bodily

10

injury to members of rival gang the United Aryan Brotherhood (UAB), in violation of Fla. Stat. §§ 784.021, 784.045, and 777.04.

In violation of 18 U.S.C. § 1959(a)(6).

## COUNT SIX
### (Threat of Violence in Aid of Racketeering Activity)

1. Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

2. In or around February 2019, in the Middle District of Florida and elsewhere, the defendants,

MAVERICK MAHER,
a/k/a "SAXON",

while aiding and abetting each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully and knowingly threatened to commit a crime of violence against a person who falsely represented membership in the Unforgiven and disrespected a member of the Enterprise, in violation of Fla. Stat. §§ 836.10, 777.04, and 777.011.

In violation of 18 U.S.C. §§ 1959(a)(4) and 2.

## COUNT SEVEN
### (Conspiracy to Commit Assault in Aid of Racketeering Activity)

1. Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

11

2.     On or about February 11, 2019, in the Middle District of Florida and elsewhere, the defendants,

MAVERICK MAHER,
a/k/a "SAXON", and
JOSHUA FISHER,
a/k/a "HAMMER",

and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully and knowingly conspired to commit assault with a dangerous weapon against and assault resulting in serious bodily injury to H.W., in violation of Fla. Stat. §§ 784.021, 784.045, and 777.04.

In violation of 18 U.S.C. § 1959(a)(6).

## COUNT EIGHT
**(Conspiracy to Commit Assault in Aid of Racketeering Activity)**

1.     Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

2.     Beginning on or about February 28, 2019 and continuing to on or about March 11, 2019, in the Middle District of Florida and elsewhere, the defendant,

MAVERICK MAHER,
a/k/a "SAXON",

and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully and knowingly conspired to commit

12

assault with a dangerous weapon against and assault resulting in serious bodily injury to persons the defendants characterized as "gray boys" and "race traitors," in violation of Fla. Stat. §§ 784.021, 784.045, and 777.04.

In violation of 18 U.S.C. § 1959(a)(6).

## COUNT NINE
### (Threat of Violence in Aid of Racketeering Activity)

1.    Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

2.    In or around July 2019, in the Middle District of Florida and elsewhere, the defendant,

MAVERICK MAHER,
a/k/a "SAXON",

for the purpose of gaining entrance to and maintaining and increasing position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully and knowingly threatened to commit a crime of violence against T.B., in violation of Fla. Stat. § 836.10.

In violation of 18 U.S.C. § 1959(a)(4).

## COUNT TEN
### (Kidnapping in Aid of Racketeering Activity)

1.    Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

13

2.     On or about November 9, 2019, in the Middle District of Florida, the

defendant,

SCOTT MARSHALL,
a/k/a "SOLO",

while aiding and abetting each other and other persons known and unknown to the

Grand Jury, for the purpose of gaining entrance to and maintaining and increasing

position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully

and knowingly kidnapped R.S., in violation of Fla. Stats. §§ 787.01(1)(a) and

777.011.

In violation of 18 U.S.C. §§ 1959(a)(1) and 2.

### COUNT ELEVEN
**(Assault in Aid of Racketeering Activity)**

1.     Paragraphs One through Five of the Introduction are realleged and

incorporated by reference as though fully set forth herein.

2.     On or about November 9, 2019, in the Middle District of Florida, the

defendant,

SCOTT MARSHALL,
a/k/a "SOLO",

while aiding and abetting each other and other persons known and unknown to the

Grand Jury, for the purpose of gaining entrance to and maintaining and increasing

position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully

and knowingly committed an assault with a dangerous weapon against and assault

14

resulting in serious bodily injury to R.S., in violation of Fla. Stat. §§ 784.021, 784.045, and 777.011.

In violation of 18 U.S.C. §§ 1959(a)(3) and 2.

## COUNT TWELVE
### (Assault in Aid of Racketeering Activity)

1.      Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

2.      On or about July 25, 2020, in the Middle District of Florida, the defendants,

> MAVERICK MAHER,
> a/k/a "SAXON",
> JOSHUA FISHER,
> a/k/a "HAMMER",
> SHAWN RUARK,
> a/k/a "NAZI", and
> JASON WOODCOCK,
> a/k/a "JAYBIRD",

while aiding and abetting each other and other persons known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully and knowingly committed an assault with a dangerous weapon against and assault resulting in serious bodily injury to C.S., in violation of Fla. Stat. §§ 784.021, 784.045, and 777.011.

In violation of 18 U.S.C. §§ 1959(a)(3) and 2.

15

## COUNT THIRTEEN
### (Assault in Aid of Racketeering Activity)

1.    Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

2.    On or about July 2020, in the Middle District of Florida, the defendants,

MAVERICK MAHER,
a/k/a "SAXON",
JOSHUA FISHER,
a/k/a "HAMMER",
SHAWN RUARK,
a/k/a "NAZI", and
BRIAN MIKKELSON,
a/k/a "CRASH"

while aiding and abetting each other and other persons known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully and knowingly committed an assault with a dangerous weapon against and assault resulting in serious bodily injury to W.H., in violation of Fla. Stat. §§ 784.021, 784.045, and 777.011.

In violation of 18 U.S.C. §§ 1959(a)(3) and 2.

16

## COUNT FOURTEEN
### (Assault in Aid of Racketeering Activity)

3.     Paragraphs One through Five of the Introduction are realleged and incorporated by reference as though fully set forth herein.

4.     On or about October 25, 2020, in the Middle District of Florida, the defendants,

JOSHUA FISHER,
a/k/a "HAMMER,"
BRIAN MIKKELSON,
a/k/a "CRASH" and
JOHN EDWARD MOORE
a/k/a "CRACKER JOHN"

while aiding and abetting each other and other persons known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the Unforgiven, an enterprise engaged in racketeering activity, unlawfully and knowingly committed an assault with a dangerous weapon against and assault resulting in serious bodily injury to P.K., in violation of Fla. Stat. §§ 784.021, 784.045, and 777.011.

In violation of 18 U.S.C. §§ 1959(a)(3) and 2.

A TRUE BILL,

_____

Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____

Samantha E. Beckman
Assistant United States Attorney

By: _____

James C. Preston
Assistant United States Attorney
Chief, Violent Crime and Narcotics Section

18

FORM OBD-34
February 23

No. 8:21-cr-218-WFJ-AAS

UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

MAVERICK MAHER, ET AL

SUPERSEDING INDICTMENT

Violations: 18 U.S.C. §§ 1959(a)(3) and 2



A true bill

Foreperson

Filed in open court this 1st day

of March, 2023.

_____
Clerk

Bail $_____

GPO 863 525

# NOTICE OF APPEAL
# (DE 1122)

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                               **CASE NO: 8:21-cr-218-WFJ-AAS**

**SHAWN RUARK.**

_____/

### NOTICE OF APPEAL

NOTICE is hereby given that Shawn Ruark, Defendant above-named, by and through his undersigned attorney, hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the Final Judgment of Conviction and Sentence entered in the proceeding on May 23, 2024, and all previous rulings against the Defendant.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of May, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Office of the United States Attorney
400 North Tampa Street, Suite 3200
Tampa, FL 33602

_/S/ Jason M. Mayberry_
MAYBERRY LAW FIRM, LLC
Jason M. Mayberry
402 E. 7th Ave.
Tampa, FL 33602
Ph-813-444-7435
Fx-727-755-0098
FBN- 36212
Attorney for the Defendant

# TRANSCRIPT OF SENTENCING HEARING (DE 1206)

```
 1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
 2                         TAMPA DIVISION

 3  UNITED STATES OF AMERICA,   )
                                )   8:21-cr-218-WFJ-AAS
 4            PLAINTIFF,         )   Tampa
                                )   May 22, 2024
 5       v.                     )   2:08 p.m.
                                )
 6  SHAWN RUARK,                )
                                )
 7            DEFENDANT.         )

 8              TRANSCRIPT OF SENTENCING HEARING
            BEFORE THE HONORABLE WILLIAM F. JUNG
 9               UNITED STATES DISTRICT JUDGE

10  APPEARANCES:

11  For the Government:
        MS. SAMANTHA ELIZABETH BECKMAN
12      United States Attorney's Office
        Suite 3200
13      400 N. Tampa Street
        Tampa, FL 33602-4798
14
    For the Defendant:
15      MR. JASON MATTHEW MAYBERRY
        The Mayberry Law Firm, LLC
16      3902 Henderson Boulevard
        #208-136
17      Tampa, FL 33629

18  Also Present:  Ms. Kaleena K. Roy

19

20

21
    Court Reporter:          Tracey Aurelio, CRR, RMR, RDR
22                           Federal Official Court Reporter
                             801 N. Florida Avenue, 15th Floor
23                           Tampa, Florida 33602
                             (813) 301-5448
24
            Proceedings recorded by mechanical stenography,
25  transcript produced by computer.
```

```
 1  _____

 2       (Proceedings commenced at 2:08 p.m.)

 3          THE COURT:  Good afternoon.  Let's call the case,

 4  please.

 5          THE COURTROOM DEPUTY:  Yes.  The Court calls

 6  8:21-cr-218-WFJ-AAS, United States of America v. Shawn Ruark.

 7          Counsel, if you can please state your appearance for

 8  the record starting with the government.

 9          MS. BECKMAN:  Good afternoon, Your Honor.  Samantha

10  Beckman on behalf of the United States.  I'm joined at

11  counsel's table by Special Agent Kerry Hundt and Task Force

12  Officer Sean Sweeney, both with the ATF, who were the case

13  agents in this case.

14          THE COURT:  Thank you.

15          MR. MAYBERRY:  Good morning, Your Honor.  Jason

16  Mayberry on behalf of Shawn Ruark.

17          THE COURT:  Counsel.

18          Can we swear Mr. Ruark, please?

19          THE COURTROOM DEPUTY:  Mr. Ruark, please stand and

20  raise your right hand.

21       (Defendant sworn.)

22          THE COURTROOM DEPUTY:  Please state your name and

23  spell your last name for the record.

24          THE DEFENDANT:  Shawn Ruark, R-U-A-R-K.

25          THE COURTROOM DEPUTY:  Thank you.  You may be seated.
```

```
 1          THE COURT:  Thank you.

 2          Mr. Ruark, in January you entered a plea of guilty to

 3  Counts 12 and 13 of the superseding indictment, which charged

 4  you with assault in aid of racketeering, which was a violation

 5  of Title 18 U.S. Code.  I previously accepted your guilty plea

 6  and adjudged you guilty of those offenses.

 7          Now, I have received a very good sentencing

 8  memorandum on your behalf that your attorney Mr. Mayberry

 9  filed, and I have read it and I appreciate it.  But let me ask

10  you, have you had enough time to go over these matters with

11  your attorney?

12          THE DEFENDANT:  I have.

13          THE COURT:  And are you satisfied with his services?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  All right.  Thank you.

16          Why don't we focus on the PSR, Mr. Mayberry, by

17  paragraph.  I thought there were -- correct me if I'm wrong --

18  objections concerning the more than minimum planning piece,

19  but focus me in on the paragraph so we can iron that out.

20          MR. MAYBERRY:  Your Honor, I object to Paragraph 83.

21  And then I believe because of 83, Paragraph 89 would have been

22  affected.  I also objected to Paragraphs 91.  And then by way

23  of my objection to Paragraph 91, I believe that would have

24  affected Paragraph 97.  Now, that would have been the initial

25  PSR.  Let me just make sure for Your Honor that --
```

```
 1          THE COURT:  I think it changed a little.

 2          MR. MAYBERRY:  I do think that it did.

 3          THE COURT:  I'm looking at April 30, 2024.

 4          MR. MAYBERRY:  It would change it, Your Honor, to

 5   Paragraphs 84, and then by virtue of that Paragraph 89.

 6          THE COURT:  And as I understand it, 84 -- and this

 7   would be in both offenses -- the more than minimal planning

 8   issue as to both counts, that's the objection?

 9          MR. MAYBERRY:  Yes, Your Honor.

10          THE COURT:  And I have read your sentencing memo, but

11   I want you to be able to create whatever record you need on

12   that point.  So if you have anything else, I'll be glad to

13   hear from you.

14          MR. MAYBERRY:  Your Honor, most of what I would argue

15   has been listed out in the memorandum, which would have been

16   the memorandum in support of objections to the pre-sentence

17   report for Mr. Ruark.  That was attached to the PSR by

18   Ms. Roy.

19          Essentially, the crux of my argument is that

20   considering who this organization is, how they tended to

21   operate, much of the basis for my argument on this is this was

22   a group of men predominantly that, for all intents and

23   purposes, did not seem to put a lot of planning and brainpower

24   behind a lot of what they did.  They did a lot of things that

25   were obviously violent and illegal, but it seemed to me that
```

1   short of the leadership of Maverick Maher and perhaps Joshua

2   Fisher to some extent, there was quite a bit of knee jerk

3   reaction in response to what they were told to do.

4           My argument is essentially when these decisions were

5   made to go out and commit these assaults on these men, there

6   was a meeting that was called.  They went.  They said, okay,

7   this is what we want to do.  We want to go and remove these

8   patches from these men.  They called the vote.  The vote

9   carried.  Off they went to conduct these crimes.

10          With respect to the C.S. individual, there were no

11  steps taken to conceal identity.  There were no steps taken to

12  conceal who they were from witnesses.  They essentially drove

13  up to the residence, stormed the home, took the individual and

14  conducted the, I guess, initial we're going to do this either

15  by force or not, and then ultimately they conducted the crime,

16  as opposed to weeks' worth of planning in terms of when to go

17  when someone would not be there, what to use to conceal their

18  identities, how can they get there without being recognized in

19  terms of a vehicle or a license plate.  You know, it wasn't

20  something where this was a well calculated cat burglary, so to

21  speak, where they were making every effort to conceal who they

22  were and not get caught ultimately.  It was very much a, we're

23  going to do this, let's go do this, and so they went.

24          And so based upon the case law that I had cited

25  within the memorandum, for both of these individuals, the W.H.

 1 | and the C.S., it's my argument that there was very little
 2 | planning involved in this.  There was a decision that was
 3 | made.  They carried out the actions.  The actions were
 4 | successful for the most part.  But in terms of an enhancement
 5 | for anything other than a minimal planning, nearly knee jerk
 6 | decision after a voted was imposed, I would argue that that
 7 | was not the case.
 8 |         I think that it is relevant for the Court's
 9 | consideration what kind of an organization this was.  And it
10 | was -- essentially it was a group of unsophisticated convicted
11 | felons that I don't believe -- without disparaging these
12 | individuals, I don't think that they thought really much
13 | further than an arm's length in front of them but for a few in
14 | the organization.
15 |         And so for those reasons, Your Honor, I think that in
16 | concert with what I know about how they were conducted from
17 | the discovery, that's the basis and the baseline for my
18 | argument.
19 |         I appreciate you giving me the opportunity to speak,
20 | Your Honor.
21 |         THE COURT:  Absolutely, and I appreciate that.  You
22 | know, on the Chad Smiley one, don't quote me to Rand McNally,
23 | but I actually have been more than once bass fishing near
24 | Satsuma.  And Satsuma to Lake City, again don't quote me, but
25 | I'm quite certain it's over a 90-minute drive.  And, of

1  course, they had to gather up.  There was a meeting and then

2  the vote or the discussion in Satsuma, and then they had to

3  make arrangements to meet and to drive and to gather up.

4        It's my understanding that Mr. Ruark brought a

5  shotgun, and they had a meet-up then at Lake City in several

6  cars.  One of the gentlemen, his girlfriend or wife drove and

7  waited there.  So there was more than minimal planning.

8        Same thing on W.H.  You know, Mr. Ruark, I guess,

9  brought his tattoo gun, or someone did.  And Mr. Ruark -- you

10 know, there was some planning there.  It was more than

11 minimal, including the other fellow who brought the -- I think

12 it was the other fellow who brought the hand torch and turned

13 it on or lit it.  And then of course the other fellow gathered

14 up the brass knuckles.  And so it was more than minimal

15 planning.  But I appreciate it, and the objection is fully

16 preserved.

17        Do you object to that ruling, government?

18        MS. BECKMAN:  No, Your Honor.

19        THE COURT:  Any other objections, Mr. Mayberry,

20 factually or numerically?

21        MR. MAYBERRY:  No, Your Honor.  There were

22 nonsubstantive essentially requests that I gave to Ms. Roy.

23        THE COURT:  Any objections factually or numerically

24 to the PSR?

25        MS. BECKMAN:  No objections, Your Honor.

Case 8:21-cr-00218-WFJ-AS Document 1206 Filed 07/09/24 Page 48 of 29 PageID 8540
USCA11 Case: 24-W1672 Document 26 Filed 07/09/24 Page 48 of 72

8

1          THE COURT:  Thank you.

2          So with the ruling just made here for the record, I

3  adopt the pre-sentence report and find that the total offense

4  level is 27.  The criminal history category is a IV.  There is

5  an advisory range of 100 to 125 months' imprisonment, one-year

6  term of supervised release.  There is no restitution.  And I

7  will waive the fine of $25,000 to $250,000, and a $200 special

8  assessment.

9          All right.  So, government, let's hear anything that

10  you have in allocution.  Glad to hear from you.  Don't be shy.

11  Tell me what you endorse and et cetera, et cetera.

12          MS. BECKMAN:  Thank you, Your Honor.

13          As it relates to this defendant, the United States is

14  asking the Court to vary upward from his guideline range and

15  impose a sentence of 210 months for a few reasons.

16          Your Honor, considering the factors under 18 U.S.C.

17  3553, the nature and circumstances of this offense, the Court

18  put it at a previous sentencing I think better than I ever

19  could.  This is violence for the sake of violence.  This is an

20  organized group of individuals who brought their beliefs

21  into -- outside of prison and onto the streets of the Middle

22  District of Florida and elsewhere.  They used sophisticated

23  communication platforms that were aimed at avoiding detection.

24  And the purpose of these communications was to raise an army

25  of sorts to go out and do their bidding.  And the defendant

1  who sits before you is one of the many who was tasked with

2  enforcing the objectives of the Unforgiven.

3       The two crimes that this defendant was charged with

4  by way of the superseding indictment are among some of the

5  most brutal the Court heard during trial.  You heard from both

6  victims in this case at trial, as did the jury, and you also

7  heard from witnesses.

8       There are some pretty interesting parallels between

9  Counts 12 and 13.  Both of those saw the enforcement of

10 Unforgiven's mission at a time where they had, to their

11 advantage, people who were able to pinpoint their victims.

12      In the first case with regards to C.S., you heard

13 from Jason Woodcock at trial that when he showed up to church

14 that day, and I'd ask the Court to recall the reason he came

15 to church was this defendant who he had met at a gas station.

16 When he went to church that day, he was the one who knew where

17 C.S. was.  He is the one that directed everyone there.

18      With regards to W.H., you heard from Mr. Bellere, his

19 roommate.  And Mr. Bellere is a member of a parallel

20 organization.  They don't have ties to the Unforgiven, but

21 clearly their sympathies were in the same place.  And that

22 person was directed by his direct president to stand aside.

23 So in both of these cases, the Unforgiven saw their missions

24 carried out in people's homes.  They victimized them in the

25 place that they should have been safe against attacks like the

```
1  | brutal ones that this defendant carried out.
2  |         In asking for a sentence that varies upward, I ask
3  | the Court to do that because of the seriousness of this
4  | offense and because of the characteristics of this defendant
5  | himself.  The PSR filed at Document 1079 tells the Court about
6  | his criminal history.  And I'm only asking you to look at his
7  | adult history.  There are two particularly violent crimes that
8  | are old enough that they appropriately don't score under the
9  | current guideline scheme, but nevertheless the Court should
10 | consider those as they demonstrate the danger that this
11 | defendant poses to the community.
12 |         At Paragraphs 112 and 114, the Court sees the
13 | defendant has convictions for aggravated assault with a weapon
14 | and for carjacking.  The carjacking relates to a kidnapping
15 | arrest.  That looks like the kidnapping count was dismissed.
16 | The defendant was sentenced to prison, but that did not
17 | dissuade him.
18 |         When he got out of prison, he was convicted of the
19 | offense of possessing, manufacturing, or selling a dangerous
20 | weapon.  He was paroled, and it appears that he violated that
21 | parole.
22 |         He had another conviction for obstruction or
23 | resisting a fugitive arrest warrant.  It appears that he
24 | served 32 months, which is the same amount of time served at
25 | Paragraph 115.
```

 1          Notwithstanding that, Your Honor, following that

 2    sentence, he was again federally prosecuted this time for

 3    felon in possession of a firearm.  He violated his term of

 4    supervised release, was sentenced to 13 months.  And between

 5    Paragraphs 117 and 118, the Court sees what he was up to.  It

 6    was the instant conduct in this case.

 7          He became a member of the Unforgiven.  If the Court

 8    recalls the testimony of multiple witnesses, in July of 2021

 9    when the indictment came out and Maverick Maher fled his

10    residence, he was with someone in the Unforgiven, and it was

11    this defendant.

12          This defendant was somewhat of a phantom or a ghost

13    to investigators who didn't know who he was.  He didn't

14    feature predominantly on the council page because he was often

15    with Maverick Maher.  So from the time of the original

16    indictment to the time of the superseding indictment,

17    Mr. Ruark's connection to the Unforgiven was merely through

18    jail calls to Maverick Maher.

19          When the superseding indictment came out, there were

20    calls made between the defendant's wife and Mr. Maher alerting

21    them of this particular case as it now related to Mr. Ruark.

22    And ultimately he was arrested out of the State of Florida in

23    the summer, last summer, brought here to the Middle District

24    and, as a comment to his very capable attorney, has been

25    presented with all the evidence and he did plead guilty.  He

1 | has not cooperated with law enforcement in any way, shape, or
2 | form. A lot of the pleadings in this case are understandably
3 | under seal. I want to make sure that the record is very clear
4 | this defendant has in no way assisted law enforcement, has not
5 | sought to assist law enforcement. And in fact, it seems that
6 | by his very actions of committing new crimes, new violent
7 | crimes in the form of the 2022 assault conviction has no
8 | intention to change what has been demonstrated through his
9 | history to be a pattern of life that poses a danger to the
10 | community.

11 | A sentence of 210 months would seek to protect the
12 | public, to deter the behavior of this specific defendant and
13 | others who would be similarly situated to him.

14 | And I would also note from a disparity standpoint,
15 | this Court sentenced a co-defendant to 190 months. That
16 | person had no prior violent convictions. This defendant
17 | stands before you emboldened, prepared to go into people's
18 | homes armed with firearms, as a felon who's been convicted of
19 | that same offense, and to commit absolutely brutal crimes for
20 | no reason other than his ideology. He's a terrorist. He's a
21 | danger to the community. And a sentence of 210 months would
22 | serve the purposes of 3553 most appropriately. I would ask
23 | you to impose that sentence. There are no forfeiture matters
24 | to address with this defendant. And any term of supervised
25 | release, I don't object to treatment because it does seem that

Case 8:21-cr-00218-WFJ-AAS   Document 1206   Filed 07/09/24   Page 43 of 72   PageID 8345
USCA11 Case: 24-11672   Document: 1206   Date Filed: 09/18/2024   Page: 43 of 72   PageID 8345

13

1  the defendant has demonstrated some struggles with substance

2  abuse in his history.  I think he can be well served by the

3  program in the Bureau of Prisons and elsewhere, but we ask for

4  210 months.

5            Thank you.

6            THE COURT:  All right.  Well, thank you.

7            Mr. Mayberry, I'll be glad to hear from you.

8            And of course, Mr. Ruark if you wish to speak, this

9  would be your time as well.  You are not required to speak or

10 penalized if you don't.

11           All right, Counsel.

12           MR. MAYBERRY:  Your Honor, candidly, when this

13 indictment came down, I'm a member of the local bar.  I'm in

14 federal court with some frequency.  I knew about the issues

15 and I knew, you know, roughly what was going on with this.  I

16 had initially received a call for an appointment to one of the

17 co-defendants in the case.  And frankly, Your Honor, I avoided

18 it.  I just didn't feel that I had the time.  And also, I was

19 very apprehensive of getting involved in a case of this

20 nature.

21           I came to court for another defendant.  My legal

22 assistant called me and said, hey, would you like a CJA

23 appointment?  I said, yes.  I took Mr. Ruark's case.  I went

24 back to my office.  I realized what it was.  And the very

25 first thing that entered my head was there's a little bit of

1 dread here that I'm on this and for the same reasons that I

2 was apprehensive initially.

3       I then went out and I saw my client.  And while I

4 won't come before the Court and say that he's made the right

5 decisions over his life or that he's made the right decisions

6 in this case, what I did not find was a man that I thought

7 that I was going to find in terms of someone that was going to

8 be banging on a table, speaking of these ideologies and going

9 off the rails in terms of what his views were to me.

10       What I found was somebody that I don't believe over

11 the course of his life has ever had a real opportunity to gain

12 acceptance.  He, like many, comes from a broken home with

13 which the only person that really offered much support for him

14 was his father who he lost when his father was only 33 to

15 carcinoma cancer.  His mother was no mother.  His grandmother

16 was no grandmother.  He had a brother that at every

17 opportunity that seemed to arise when Mr. Ruark might have

18 needed love and care and support, it was given to the brother.

19 If there was a dispute, the brother carried through and

20 ultimately seemed to receive all the love, attention, and

21 care.

22       In this case, Mr. Ruark pled open.  The reason that

23 we pled him open was because over the course of this case, we

24 had many conversations as to how do we approach trial versus

25 entering a plea.  I suggested at one point, if we try the

 1  case, let's separate you from this organization, because I

 2  felt like that was really going to be his only chance of

 3  raising a defense.  Mr. Ruark was never interested in going to

 4  trial.  Mr. Ruark was interested in resolving his case and

 5  trying to put it behind him.

 6          The reason that we have moved forward by way of an

 7  open plea is because when he gets sentenced to the Bureau of

 8  Prisons, very validly so, he's terrified of what may happen

 9  when he gets there.  I think for all of these individuals that

10  are a part of this, and this is a scenario where he

11  voluntarily got into this.  So he understands that his current

12  problem is one that he has in effect created for himself in

13  most ways.  But when he goes in, if he separates himself from

14  this prison gang, he is on an island where he is

15  essentially -- could be targeted by any particular group

16  within the prison regardless of who they are, who he is.  He

17  has no protection.

18          Your Honor knows this likely better than I do.  When

19  a lot of these guys go to prison, they sect off and they

20  oftentimes will affiliate by race or they may affiliate by

21  other gang associations or whatever.  And in part, it's for --

22  well, not probably.  It's for some sort of protection.

23          Had he cooperated in this case -- and I think that

24  the other men that did cooperate are probably at the risk of

25  this as well -- there is concern as to not only what might

```
 1  blow back against them by other Unforgiven members that are
 2  also incarcerated but also those allies that they may have.
 3        I mean, it went so far as, my conversations with him,
 4  as to, well, what if we cooperate and what if we ultimately
 5  asked for an institution that was all the way across the
 6  country to separate yourself from anything close to the
 7  Unforgiven who was founded in Florida.  The issue with that,
 8  which I can understand, is there are fingers that would extend
 9  to other organizations that may cause harm.
10        So Mr. Ruark is before the Court accepting full
11  responsibility for what he's done.  I don't want that to be
12  lost here because he didn't cooperate or because he is not
13  here by a plea agreement.  That is strategic in an effort in
14  the hope that when he gets to the Bureau of Prisons, someone
15  can't come back against him and say you're a cooperator,
16  you're now a marked man, because he's dealing with that in the
17  jail as it stands now.  And he's dealing with that from these
18  people on the outside that are accusing him of being a
19  cooperator.  Some have said that he actually testified at
20  trial, which Your Honor knows did not happen.  So that is
21  something that's real for him, but he is before the Court to
22  accept responsibility.  I don't mean to go way down the line
23  on that, Your Honor, but I feel like that's important so that
24  you understand why we're here and why we ultimately are doing
25  this.
```

```
 1          The crimes that are committed in this case, he is not
 2  in any way minimizing that.  He participated in them.  He did
 3  what he did.  He was involved in that.  This is a scenario
 4  where, while he got involved in this, once these men get in
 5  it, like many other gang affiliations whatever it may be where
 6  there's a very, very violent element of it, when they would
 7  take a vote to go do these things, if they refused to do then
 8  what was voted on and what was decided, they then could find
 9  themselves in some peril as well.
10          So I think, again, I'm not saying that because
11  there's an effort to minimize the conduct or how he got into
12  the organization.  But once the men got in, they're really in
13  a jam if they wanted to get out.  Kind of the blood in, blood
14  out for a lot of gangs.  It would have been -- you know, he
15  could have found himself in the same peril.  Not necessarily
16  just him but anybody.
17          He did participate in it.  He is here before the
18  Court asking for a guideline sentence.  He's not asking for a
19  variance.  He's asking for a guideline sentence because,
20  respectfully, Your Honor, all of his conduct has been
21  accounted for within the sentencing guidelines.
22          And so while it's a violent crime, while it's a crime
23  that is something that it's not easy to read, it has been
24  accounted for in the guideline.  He has a criminal history
25  that's accounted for in the guideline pursuant to the
```

1   sentencing guideline rules and regulations.  To ask for a

2   sentence that is nearly double what he is guidelining out at,

3   I think that that is excessive with respect to 3553(a) and the

4   spirit behind that sentencing statute.

5            Mr. Ruark is a person that, throughout his life, he

6   does have a history of -- he does have a criminal history.  He

7   has an extensive criminal history, and he has seen himself in

8   and out of facilities.  This is the first time in his life

9   that he has ever found himself in joining an organization like

10  this.  He's very much someone that I don't think has ever been

11  accepted or brought into the fold in any kind of positive

12  organization or group.

13           I dug for -- this is the second time that I've done

14  this, but I had to go back in and look.  I represented another

15  Unforgiven member maybe five years ago.  And my question was,

16  what causes someone to join and get in something like this?

17  I've always wondered why that was the case.  And so I found

18  this study that I cited, the Ervin Staub study.  And I found

19  another study that went in there, went into the sentencing

20  memorandum.  To me that very much signals what Mr. Ruark had

21  going on in his childhood.  He was never someone that was

22  accepted.  He was never someone that found a way.  He was

23  never someone that felt as if he had stability.

24           He goes and he finds these people, Maverick Maher who

25  I don't know.  I have never been in his presence, but I have

1  seen very much of what he has put on the Marco Polo social
2  media app.  I have seen the way that he speaks.  I have seen
3  how he influences people.  And I think that he was very good
4  at bringing people into the fold, bringing people who are not
5  sophisticated people, bringing people in that may not have
6  ever had a feeling of community or society.  I think that he
7  was obviously very good at that because he brought a lot of
8  people in to this.  And everybody makes their choices.
9  Everybody chooses what they do, but Maverick Maher was in this
10 position of leadership, I think, very much for a reason.
11 Ultimately joins, finds himself before this Court.
12         Your Honor, I'm asking for a guideline sentence on
13 this case because I do feel that a guideline sentence is
14 sufficient but not greater than necessary to affect what needs
15 to be done in this case.  I don't know that a sentence of
16 double that -- I don't think that a sentence of double that is
17 going to have any deterrent effect.  I don't think that's
18 going to affect recidivism.
19         Mr. Ruark is 46 years old.  If he goes away for 10
20 years, we're looking at him coming out at 53 and a half, 54,
21 assuming he gets the 85 percent credit.  At that point, he is
22 going to be considerably older.  If he goes away for what the
23 government is asking for, he may not make it through.  I don't
24 know.  But that's -- I just feel -- I would employ Your Honor
25 to consider the guideline sentence and to consider that all of

1   his conduct is accounted for there, and that that would be a

2   sentence that's sufficient but not greater than necessary.

3          Thank you, Your Honor.

4          THE COURT:  Mr. Ruark, if you wish to speak, you are

5   welcome to.  You are not penalized if you speak only through

6   counsel.

7          MR. MAYBERRY:  Your Honor, he would like to make a

8   statement.  I also have a letter from his wife that she asks

9   if Your Honor would review at the bench or look at it.

10         THE COURT:  Sure.  Absolutely.  And I will read it or

11  you can read it, whatever you want.  You want to hand it up?

12  I will read it silently, or if you want to read it verbally.

13         MR. MAYBERRY:  I will hand it up if that's okay.

14         THE COURT:  I will read it right now, and then we'll

15  put it in the record.

16         MR. MAYBERRY:  Thank you.

17         THE COURT:  So let's get that done first.  Thank you.

18         I'm looking at this letter here from Heather Ruark.

19  So thank you, Ms. Ruark.  I'm going to read it to myself, and

20  then we're going to put it in the permanent record.

21         We are going to put that in the record.  And I

22  appreciate that letter very much.  Thank you.

23         All right.  Anything from Mr. Ruark?  Just grab that

24  mic.  You don't have to stand.  You have to talk into the mic

25  though.  Just pull that thing right to you and tell me what's

1  on your mind.

2       THE DEFENDANT:  Well, Your Honor, I have a lot on my

3  mind.  I apologize for what I did.  I apologize for who I was,

4  you know, and the government has a lot to say about me, but,

5  you know, one thing that she didn't bother to say is my

6  ideology is back here with my family.  Those are my stepkids.

7  That's my wife.  And I made steps to get -- I know I joined

8  the Unforgiven, but I didn't know really what I was getting

9  into, and I made steps to get away from them.

10       I moved to North Carolina.  And the government was

11  quick to point out that, you know, I learned of this

12  indictment over the telephone, but what she didn't point out

13  is I didn't run.  I stayed there and helped my stepdaughter

14  with her reconstructive foot surgery, helped her get around.

15  And like my lawyer told you, I stand here in front of you and

16  trying to face what I did.

17       I just don't think that the 210 months is fair.  I

18  know the Court may disagree.  And I understand, you know, that

19  I did wrong.  And I just wanted to apologize and say that I'm

20  sorry that I hurt my family most of all.  I just want to be

21  able to be with them.  And that's all I want to say.

22       THE COURT:  All right.  Well, thank you.  I

23  appreciate that.

24       Anything else, Mr. Ruark or Mr. Mayberry?

25       MR. MAYBERRY:  No, Your Honor.

1    THE COURT:  All right.  So I was going to give you 20
2  years until I just heard you talk.  So I'm going to give you
3  somewhat less than that but obviously not as small as you
4  want.

5    Look, you know, we have one state gun prior felony;
6  one, ten years later; one federal.  And then we have an
7  assault.  Then we have a carjacking.  Then we have two parole
8  violations.  Then a supervised release violation federally.
9  And then we had the gun at Smiley's house which you brought.
10 You were part of the assault on the other guy.

11    It just boggles anyone's mind that somebody would
12 bring a blow torch to an assault, like it's just almost hard
13 to even put your head around that.  There's kids in Florida
14 that rob a liquor store.  And the clerk fights and the dude
15 shoots the clerk and the kid's looking at the death penalty.
16 That's violence, but this is just something else.  I mean, the
17 cutting up of Smiley's neck for no real purpose other than
18 just violence for its own sake, to terrorize people.  To bring
19 a blow torch just boggles my mind that people can do that.

20    I'm going to recommend RDAP.  And Mr. Mayberry, do
21 you want me to recommend North Carolina?  I don't know what's
22 up there.  I mean, with this record he's not going to get a
23 camp.  So what do you want me to recommend?

24    MR. MAYBERRY:  Your Honor, I think Butner keeps him
25 close to his family.  The one thing that I don't know -- I

1 know that Your Honor can't influence BOP or compel BOP, but I

2 don't know if there would be a possibility that you would

3 recommend for him to go to like a sensitive needs yard or a

4 fallout yard where he's not -- where he's excised from gang

5 members or cohorts that were involved in this.

6      THE COURT: The record is clear that he didn't

7 cooperate. So I will certainly -- you know, I don't know what

8 to tell you. These guys, there's gangs all over these federal

9 prisons. So I don't know what I would say. What would you

10 have me say?

11      MR. MAYBERRY: I would just ask that he has -- since

12 I have represented him, there have been accusations by others

13 that he's cooperating.

14      THE COURT: Yeah, because they're all paranoid now

15 because half of them are getting a lot of time and some of

16 them aren't. So it's a big paranoia thing. What do you want

17 me to say in the judgment? And you have to be careful what

18 you ask for, because if I say where there's no gang activity,

19 I'm sure there's some prison somewhere in Nebraska where it's

20 all the informants and you may not want to be there.

21      MR. MAYBERRY: Can I supplement that, Your Honor,

22 possibly with an email or a document filed?

23      THE COURT: Sure, yes. Just send it to

24 Mr. Gooding-Butts and copy the government on it. I will put

25 down anything you want, but it's just with BOP you've got to

```
 1   watch what you ask for because you might get it.  And then you
 2   can't change your mind, you know, because I can't -- once the
 3   judgment gets typed, unless there's a Rule 35, you can't
 4   change that.
 5            MR. MAYBERRY:  I appreciate that advice, Your Honor.
 6   Thank you.
 7            THE COURT:  So this is just a bad -- this is violence
 8   for violence sake and there's a lot of history here that's not
 9   good, assault, carjacking.  I'm not going to go through it
10   again.  I'm not going to lecture anybody.  But to reflect the
11   nature of the offense and the offender and to protect the
12   public from what is a bad record, there is an upward variance
13   needed.
14            Pursuant to 3551 and 3553, it's the judgment that
15   Mr. Ruark is committed to the custody of the Bureau of Prisons
16   for a term of 180 months, which is concurrent as to both
17   counts.
18            Upon release from imprisonment -- that's an upward
19   variance for the grounds I've stated.  Upon release from
20   imprisonment, there is a three-year term of supervised
21   release, which is concurrent as to both counts.  While on
22   supervised release, you will have to comply with the mandatory
23   and standard conditions adopted by the court in the middle
24   district which can be found at 5D1.3(a) and (c) of the
25   U.S. Sentencing Guidelines.
```

1          In addition, the following special conditions:

2          You will have to have a full-time, on-the-record job,

3   tax-paying job, not off the books, with proof of tax paying.

4   And the reason is because you need 40 quarters of tax paying

5   to get your Social Security check.  And you are going to want

6   that.  So full-time job.  If you don't want to do a full-time

7   job, then you may not do that, and then you will have to do 30

8   hours a week community service.

9          You will have to participate in a substance abuse

10  program out-patient or in-patient and follow the probation

11  office's instructions regarding implementation of this

12  directive and contribute to the cost of these services not to

13  exceed an amount determined reasonable by the probation

14  office's sliding scale for substance abuse treatment services.

15         During and upon completion of this program, you will

16  have to submit to random drug testing.  And if required, you

17  will have to participate in a mental health treatment program,

18  out-patient or in-patient, and follow the probation office's

19  instructions regarding implementation of this court directive.

20  Further, you will have to contribute to the cost of these

21  services not to exceed an amount determined reasonable by the

22  probation office's sliding scale for mental health treatment

23  services.  No contact indirectly or directly with Chad Smiley

24  and -- is it William Holden?

25         MS. BECKMAN:  Warren Holden.

1          THE COURT:  Warren Holden.  No contact with anyone in

2    your indictment, in the second superseding indictment.  No

3    involvement with any gang or any white supremacy group

4    whatsoever.

5          You will have to submit to a search of your person,

6    residence, place of business, any storage units under your

7    control, computer, or vehicle conducted by a United States

8    probation officer at a reasonable time and in a reasonable

9    manner based upon reasonable suspicion of contraband or

10   evidence of violations of conditions of release.  You will

11   have to inform any other residents the premises may be subject

12   to search pursuant to this condition, and failure to submit to

13   such a search may be grounds for revocation.

14         Having been convicted of a qualifying felony, you'll

15   have to cooperate in the collection of DNA as directed.  No

16   controlled substances, including marijuana as long as it is a

17   federally scheduled substance.  No recreational marijuana.  No

18   medical marijuana or any other controlled substance.  One drug

19   test within 15 days of placement and at least two periodic

20   drug tests thereafter as directed by probation, not to exceed

21   104 per year.  Restitution is not ordered because the victims

22   haven't requested it.

23         Based upon a financial status, I waive the imposition

24   of a fine.  There is a $200 assessment which is due

25   immediately.

1     Pursuant to 3553(a)(1) through (7), I find the

2 sentence imposed is sufficient but not greater than necessary

3 to comply with the statutory purposes of sentencing.  I have

4 already stated the factors for the variance, which is to

5 reflect the offense and the offender and to protect the public

6 from further crimes, the gratuitous, terroristic nature of the

7 violence and the lengthy firearms and violent history that

8 Mr. Ruark has had previously.

9     Having pronounced sentence, government, any

10 objections beyond those previously noted?

11     MS. BECKMAN:  No, Your Honor.  Thank you.

12     THE COURT:  Mr. Mayberry, what else for the record,

13 please?

14     MR. MAYBERRY:  Nothing further, Your Honor.

15     THE COURT:  All right.  I will recommend RDAP,

16 Butner, and anything else that you ping over to

17 Mr. Gooding-Butts.  Just make sure the government gets it in

18 case they have an issue with any of that.

19     You have a right to appeal from this judgment and

20 sentence, Mr. Ruark.  And Mr. Mayberry will take care of that.

21 It's a 14-day notice, and it's waived unless it's filed.

22     He will handle that.  I will tell the clerk not to

23 accept -- not to charge a fee and to accept any filing without

24 cost.  And the government may also appeal from that.

25     Anything else, government?

1   MS. BECKMAN: No. Thank you, Your Honor.

2   THE COURT: Defense?

3   MR. MAYBERRY: No, Your Honor.

4   THE COURT: All right. We're in recess. Good luck.

5  (Proceedings concluded at 2:49 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1   UNITED STATES DISTRICT COURT    )
                                    )
2   MIDDLE DISTRICT OF FLORIDA      )

3
                    REPORTER TRANSCRIPT CERTIFICATE
4
        I, Tracey Aurelio, Official Court Reporter for the United
5   States District Court, Middle District of Florida, certify,
    pursuant to Section 753, Title 28, United States Code, that
6   the foregoing is a true and correct transcription of the
    stenographic notes taken by the undersigned in the
7   above-entitled matter (Pages 1 through      inclusive) and that
    the transcript page format is in conformance with the
8   regulations of the Judicial Conference of the United States of
    America.
9
                                    /s    Tracey Aurelio
10
                                    _____
11                                  Tracey Aurelio, RMR, RDR, CRR
                                    Official Court Reporter
12                                  United States District Court
                                    Middle District of Florida
13                                  Tampa Division
                                    Date:  July 9, 2024
14

15

16

17

18

19

20

21

22

23

24

25
```

# JUDGMENT IN CRIMINAL CASE (DE 1241)

Shawn Ruark
8:21-cr-218-WFJ-AAS

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

SHAWN RUARK

Case Number: 8:21-cr-218-WFJ-AAS

USM Number: 27657-058

Jason Mayberry, CJA

## JUDGMENT IN A CRIMINAL CASE

The Defendant pleaded guilty to Counts Twelve and Thirteen of the Superseding Indictment. The Defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Numbers |
|---|---|---|---|
| 18 U.S.C. §§ 1959(a)(1) and 2 | Assault in Aid of Racketeering Activity | July 25, 2020 | Twelve |
| 18 U.S.C. §§ 1959(a)(3) and 2 | Assault in Aid of Racketeering Activity | July 2020 | Thirteen |

The Defendant is sentenced as provided in the following pages of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

IT IS ORDERED that the Defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the Defendant shall notify the court and United States Attorney of any material change in the Defendant's economic circumstances.

Date of Imposition of Judgment:

May 22, 2024

I CERTIFY THE FOREGOING TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL
CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
BY: Lourdes Del Rio

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

May 23, 2024

AO 245B (Rev. 09/19) Judgment in a Criminal Case

Shawn Ruark
8:21-cr-218-WFJ-AAS

## IMPRISONMENT

The Defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **ONE HUNDRED EIGHTY (180) MONTHS.** This term consists of a 180-month term as to Count 12 and a 180-month term as to Count 13, both terms to run concurrently.

The Court makes the following recommendations to the Bureau of Prisons:

- Defendant be medically evaluated and treated for health issues.
- Defendant be allowed to receive vocational training in the following areas: Agriculture.
- Defendant be considered for the 500 Hour Residential Drug Abuse Program (RDAP), if eligible.
- Defendant be incarcerated at FCI Butner.
- Defendant be incarcerated in a gang free division of the Bureau of Prisons due to his personal safety being a concern.

The Defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on ___8/14/24___ to ___nca___

at ___Pine Land, Ky_____, with a certified copy of this judgment.

S. Lovitt, Wade.
~~UNITED STATES MARSHAL~~

By: ___P. Elliott, CSO___
~~Deputy U.S. Marshal~~

AO 245B (Rev. 09/19) Judgment in a Criminal Case

Shawn Ruark
8:21-cr-218-WFJ-AAS

## SUPERVISED RELEASE

Upon release from imprisonment, the Defendant will be on supervised release for a term of **THREE (3) YEARS.**
This term consists of a 3-year term as to Count 12 and a 3-year term as to Count 13, both terms to run concurrently.

## MANDATORY CONDITIONS

1. Defendant shall not commit another federal, state or local crime.
2. Defendant shall not unlawfully possess a controlled substance.
3. Defendant shall refrain from any unlawful use of a controlled substance. This includes marijuana if its still a federal schedule. You will have to submit to one drug test any type of marijuana, medical, recreational or whatever as long as it's federal, it's barred. Defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court. The Defendant must submit to random drug testing not to exceed 104 tests per year.
4. Defendant shall cooperate in the collection of DNA as directed by the Probation Officer.

The Defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

The Defendant shall also comply with the additional conditions on the attached page.

AO 245B (Rev. 09/19) Judgment in a Criminal Case

Shawn Ruark
8:21-cr-218-WFJ-AAS

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, Defendant shall comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by Probation Officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. Defendant shall report to the Probation Office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the Probation Officer instructs you to report to a different Probation Office or within a different time frame. After initially reporting to the Probation Office, the Defendant will receive instructions from the court or the Probation Officer about how and when the Defendant must report to the Probation Officer, and the Defendant must report to the Probation Officer as instructed.
2. After initially reporting to the Probation Office, you will receive instructions from the court or the Probation Officer about how and when Defendant shall report to the Probation Officer, and Defendant shall report to the Probation Officer as instructed.
3. Defendant shall not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the Probation Officer.
4. Defendant shall answer truthfully the questions asked by your Probation Officer
5. Defendant shall live at a place approved by the Probation Officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), Defendant shall notify the Probation Officer at least 10 days before the change. If notifying the Probation Officer in advance is not possible due to unanticipated circumstances, Defendant shall notify the Probation Officer within 72 hours of becoming aware of a change or expected change.
6. Defendant shall allow the Probation Officer to visit you at any time at your home or elsewhere, and Defendant shall permit the Probation Officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. Defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the Probation Officer excuses you from doing so. If you do not have full-time employment Defendant shall try to find full-time employment, unless the Probation Officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), Defendant shall notify the Probation Officer at least 10 days before the change. If notifying the Probation Officer at least 10 days in advance is not possible due to unanticipated circumstances, Defendant shall notify the Probation Officer within 72 hours of becoming aware of a change or expected change.
8. Defendant shall not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, Defendant shall not knowingly communicate or interact with that person without first getting the permission of the Probation Officer.
9. If you are arrested or questioned by a law enforcement officer, Defendant shall notify the Probation Officer within **72 hours.**
10. Defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. Defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the Probation Officer determines that you pose a risk to another person (including an organization), the Probation Officer may require you to notify the person about the risk and Defendant shall comply with that instruction. The Probation Officer may contact the person and confirm that you have notified the person about the risk.
13. Defendant shall follow the instructions of the Probation Officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. Probation Officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature:_____     Date:_____

AO 245B (Rev. 09/19) Judgment in a Criminal Case

Shawn Ruark
8:21-cr-218-WFJ-AAS

## ADDITIONAL CONDITIONS OF SUPERVISED RELEASE

1. The Defendant must maintain and hold a full-time, verifiable, taxable job (USSG § 5D1.3(c)) or the defendant must perform 30 hours per week of community service (USSG § 5D1.3(e)(3)).

2. The Defendant shall participate in a substance abuse program (outpatient and/or inpatient) and follow the Probation Officer's instructions regarding the implementation of this court directive. Further, the Defendant shall contribute to the costs of these services not to exceed an amount determined reasonable by the Probation Office's Sliding Scale for Substance Abuse Treatment Services. During and upon completion of this program, the Defendant is directed to submit to random drug testing.

3. The Defendant shall participate in a mental health treatment program (outpatient and/or inpatient) and follow the Probation Officer's instructions regarding the implementation of this court directive. Further, the Defendant shall contribute to the costs of these services not to exceed an amount determined reasonable by the Probation Office's Sliding Scale for Mental Health Treatment Services.

4. The Defendant shall submit to a search of your person, residence, place of business, any storage units under the Defendant's control, computer, or vehicle, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. You shall inform any other residents that the premises may be subject to a search pursuant to this condition.

5. The Defendant shall have no contact, direct or indirect, with victims identified in Counts 12 and 13, (C.S. and W.H.). Also, no contact with any members listed in the Superseding Indictment.

6. The Defendant shall have no affiliation or association with Unforgiven or Aryan Brotherhood members or associates.

AO 245B (Rev. 09/19) Judgment in a Criminal Case

**Shawn Ruark**
**8:21-cr-218-WFJ-AAS**

## CRIMINAL MONETARY PENALTIES

The Defendant must pay the following total criminal monetary penalties under the schedule of payments set forth in the Schedule of Payments.

| Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|------------|-------------|------|------------------|-------------------|
| $200.00 | N/A | Waived | Waived | Waived |

## SCHEDULE OF PAYMENTS

Having assessed The Defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

Special Assessment shall be paid in full and is due immediately.

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the Probation Officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, and (9) penalties, and (10) costs, including cost of prosecution and court costs.

AO 245B (Rev. 09/19) Judgment in a Criminal Case

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that two copies of the Appendix were mailed to the Court of Appeals by U.S. Mail on the 18th day of September, 2024, and that, on the same day, the foregoing Appendix was filed using CM/ECF and electronically served on Collette B. Cunningham, Esq., Office of the United States Attorney, 300 N. Hogan Street, Suite 700, Jacksonville, FL 32202.

*J. Rafael Rodriguez*
J. RAFAEL RODRIGUEZ